**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
101 Eisenhower Parkway, STE 412
Roseland, New Jersey 07068
Tel: (973) 287-5006
Fax: (973) 226-4104

*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CORINTHIAN COMMUNICATIONS, INC.<br><br>Debtor. | Chapter 11 (Sub-Chapter V)<br><br>Case No. 22-10425 (MG) |

**SUPPLEMENTAL DECLARATION OF LARRY MILLER**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

1.　I, Larry Miller, am the President of the above-captioned debtor and debtor-in-possession (the "***Debtor***"), a Delaware corporation limited liability company. This supplemental declaration (the "***Declaration***") is submitted by the Debtor pursuant to the Local Rules of this Court, in connection with filing of a Chapter 11 case by the above Debtor.

A.　The Debtor's Business

2.　The Debtor has been in business since 1974. The Debtor provides services to the following non-debtor affiliates: Corinthian Trading Inc.; Corinthian Media Inc; and Broadcast Buying Services (each a "***Non-Debtor Entity***" and collectively, the "***Non-Debtor Entities***"). The Debtor and each of the Non-Debtor Entities are one hundred percent owned by Larry Miller.

3.　The Debtor is the entity that has employees – which currently number twenty-

seven. The Non-Debtor Entities do not have any employees. The Debtor estimates its monthly obligation to its employees to be approximately $252,000. Such amounts do not include commissions which amounts range depending on the amount of sales generated by the Non-Debtor Entities.

4. The Non-Debtor Entities are each operational companies that provide media services to third-parties (not related to the Debtor). For instance, Corinthian Trading purchases media time at one rate and then resells such media time in the marketplace for a profit. The monies that are made from that entity are in part then used to satisfy the Debtor's obligations to its employees that provided services to that particular Non-Debtor Entity.

5. Similarly, monies made by Corinthian Media and Broadcast Services are used to pay the Debtor's employees that provide services to such Non-Debtor Entities.

6. The Debtor's purpose is to compensate its employees for work such employees perform for the respective Non-Debtor Entity(ies).

7. With respect to the Non-Debtor Entities, the flow of funds is unidirectional, in that funds flow from the Non-Debtor Entities to the Debtor – and not *vice versa*.

8. Subsequent to the filing of the Chapter 11 case, the Debtor and the Non-Debtor Entitles reached an agreement with the Office of the United States Trustee and the Sub-Chapter V Trustee pursuant to which, the Debtor agreed to consolidate with the Non-Debtor Entities its financials for the sole purpose of calculating disposable income for plan distribution purposes. Such stipulation will be submitted to the Court for consideration and approval.

B. <u>Paycheck Protection Program Loans</u>

9. On May 8, 2020, the Debtor received $448,985.00 on account of the Paycheck

Protection Program.

10. On March 9, 2021, the Debtor received $449,331.70 on account of the Paycheck Protection Program.

11. Such amounts were forgiven.

C. <u>The Debtor's Principal</u>

12. The Debtor is one hundred percent owned by me – Larry Miller. Additionally, each of the Non-Debtor Entities are one hundred percent owned by me – Larry Miller.

13. I have not been paid by the Debtor or any of the Non-Debtor Entities since 2015. Using a very conservative number, I estimate that I am owed at least $1.2 million. I reached that number based on a relatively low $200,000 per year salary, if I were to take one. In fact, three employees have salaries / commissions that exceed that number on a yearly basis.

14. When the case was initially commenced, the amount of my claim was included in the Debtor's Schedules of Assets and Liabilities.

15. On June 7, 2022, I directed the Debtor to remove my claim from the Schedules of Assets and Liabilities. Such was done by amending Schedules E and F. *See* Docket No. 30.

16. I believe my claim to be valid and I am working to gather the necessary support to demonstrate such. Additionally, I am speaking with my independent advisors and will make the determination based on their advice, as to whether a proof of claim should be filed in advance of the applicable bar date.

D. <u>The Debtor's Former Premises</u>

17. During COVID-19, the Debtor was unable to use its office location, and as such, under the terms of the lease (the "***Lease***"), the Debtor believes that it does not have to pay rent.

Debtor's landlord – 500 8th Avenue LLC (the "*Landlord*") – disputes the Debtor's interpretation of the Lease and asserts that the Debtor owes it $1,030,342.00. The Debtor disputes such amount and such amount, if valid, is unsecured debt. As set forth below, the landlord commenced an action to evict the Debtor and for rent landlord asserts is owing. Notably, the Landlord has made deals with other tenants where past rent was forgiven, but no such accommodation was given to the Debtor.[1]

18. The Debtor believes that the Lease to the office space was terminated prior to the filing of the Debtor's chapter 11 case. Despite such, on the date that this Chapter 11 case was commenced, the Debtor filed a motion, out of an abundance of caution, to reject the Lease as of the date of the Chapter 11 commencement. The Debtor's concern was that the Landlord would take the position that the Lease was not terminated and seek administrative expense claims for post-petition rent. Thus, while the Debtor believed that the lease was properly terminated, it filed the motion to protect itself in case such an argument was made.

19. Ultimately, the Landlord and the Debtor entered into a stipulation post-chapter 11 filing that resolves such motion, acknowledges that the Lease was terminated prior to the Chapter 11 filing, and thus no administrative expense claim for rent would be asserted. The Debtor and the Landlord expect to submit such stipulation to the Court for approval.

20. With regard to the ownership of the Landlord, approximately twenty percent of

---

[1] I am currently in litigation against various entities as well as the co-manager (David Berley) of those entities (Mr. Miller is the other co-manager). Mr. Berley is the co-manager as well as part owner of the Landlord. The matter is titled: *In the Matter of the Application* of *Larry Miller v. 22 Ericsson Owner LLC, 25 North Moore Owner LLC, 36 LLC, 500 Eighth Avenue, LLC, 940 Columbus LLC, Milber 219 Mamaroneck LLC, Milber Holding LLC, S&S Investors Two LLC, and David I. Berley*, pending in the New York State Supreme Court, County of New York, Index No. Index No. 650203/2022. The relief sought by Mr. Miller in such litigation is judicial dissolution, among other things.

the Landlord is owned by a trust for Mr. Miller's children.

E. Litigation

21. Prior to the commencement of the Chapter 11 case, the Landlord commenced an action in the NYC Civil Court, Non-Housing Division, Case No. LT-308684-21 seeking eviction and monetary damages. That matter was stayed following the filing of this Chapter 11 case.

F. Claims Against the Debtor

22. The claims against the Debtor are on account of claims by the Landlord and amounts owing to certain employees. The amounts owing to the Landlord are general unsecured obligations. Those owing to the employees are on account of commissions and are part priority and part general unsecured.

23. The Debtor does not have any secured debt.

24. Information regarding my claim is set forth in Section B above.

G. Chapter 11 Filing

25. The Debtor commenced its Chapter 11 case due to the sizable amount of the Landlord's claim. During the course of the Chapter 11 case, the Debtor intends on proposing a plan on either a consensual basis or a cramdown basis pursuant to Bankruptcy Code section 1191.

26. Pursuant to rule 1007-2(a)(4) of the Local Bankruptcy Rules annexed hereto as **Exhibit "1"** is a list containing the names and addresses of the Debtor's twenty (20) largest unsecured creditors, excluding insiders.

27. Pursuant to Rule 1007-2(a)(5) of the Local Bankruptcy Rules, the Debtor does not have any secured creditors.

28. Pursuant to Rule 1007-2(a)(6) of the Local Bankruptcy Rules annexed hereto as

**Exhibit "2"** is a schedule of the Debtor's assets and liabilities.

29. Pursuant to Rule 1007-2(a)(7) of the Local Bankruptcy Rules, the Debtor is a privately held corporation and has no publicly held securities.

30. Pursuant to Rule 1007-2(a)(8) of the Local Bankruptcy Rules, the Debtor does not have property in the hands of a custodian.

31. Pursuant to Rule 1007-2(a)(9) of the Local Bankruptcy Rules, as noted above, prior to the filing of this Chapter 11 case, the Debtor's principal office is located at 500 Eighth Avenue, New York, New York 10018.

32. Pursuant to Rule 1007-2(a)(10) of the Local Bankruptcy Rules, the Debtor's books and records, prior to the filing of this Chapter 11 case, were located at 500 Eighth Avenue, New York, New York 10018. All records are electronically stored.

33. Pursuant to Rule 1007-2(a)(11) of the Local Bankruptcy Rules, the Debtor is a defendant in the action titled *500 Eighth Avenue LLC v. Corinthian Communications LLC*, Case No. 308684/2021, pending in the Civil Court for the City of New York, located in Manhattan, New York.

34. Pursuant to Rule 1007-2(a)(12) of the Local Bankruptcy Rules, I am the only officer and director of the Debtor.

35. Pursuant to Rule 1007-2(b)(1) of the Local Bankruptcy Rules, the Debtor has twenty-seven employees and has monthly payroll obligations in the approximate amount $252,000, plus commissions which vary depending on the amount of sales of the Non-Debtor Entities.

36. Pursuant to Rule 1007-2(b)(2) of the Local Bankruptcy Rules, the Debtor does not propose to make any payments to the Debtor's director Larry Miller for the 30-day period following the filing of the Chapter 11 petition.

37. Pursuant to Rule 1007-2(b)(3) of the Local Bankruptcy Rules, in the next 30 days, the Debtor expects to collect approximately $252,000 plus the amount of any post-petition commissions owing to cover its payroll obligations.

*[remainder of page intentionally left blank]*

Under penalty of perjury, I affirm that the facts set forth herein are accurate to the best of my knowledge.

Dated: June 14, 2022

*/s/ Larry Miller*  
Larry Miller

# EXHIBIT 1

## DEBTOR'S TOP 20 UNSECURED CREDITORS

500 Eighth Ave LLC
500 Eighth Avenue
New York, NY 10018
-and-
P.O. Box 76119
Baltimore, MA 21275-6119
$1,030,342.00 (Disputed)

Ann Mastracchio
105-10 101 Road
Ozone Park, NY 11416
$36,897.05 (total) $15,150.00 (priority)*

Ellen Carry
334 W 87th St. 3A
New York, NY 10024
$19,410.34 (total) $15,150.00 (priority)*

Larry Schneiderman
4 Walnut Road
East Rockaway, NY 11518
$7,905.34 (total) $7,905.34 (priority)*

Robert Klein
13035 Jerome Jay Drive
Hunt Valley, MD 21030
$95,395.45 (total) $15,150.00 (priority)*

Tina Snitzer
180 West End Ave #6
New York, NY 10023
$153.45 (total) $153.45 (priority)*

---

Such amounts do not include commissions and such number may change. Any change will be reflected in an appropriate amendment to the Debtor's Schedules of Assets and liabilities.

# EXHIBIT 2

## SUMMARY OF ESTIMATED ASSETS AND LIABILITIES AS OF THE PETITION DATE

**Estimated Assets:**

Cash:   $12,279
FF&E:   $10,000
ERC:    $334,182

**Estimated Liabilities:**

Secured Claims:           $0
Priority Claims:          $159,761.63
General Unsecured Claims: $1,190,103.63*

---

Such amounts do not include commissions and such number may change. Any change will be reflected in an appropriate amendment to the Debtor's Schedules of Assets and liabilities.