UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
:    Chapter 11
In re               :
:    Case No. 22-10425 (MG)
Corinthian Communications Inc.,   :
:
Debtor.    :
---------------------------------------------------------x

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon this Notice of Motion, the Declaration of Eric Huebscher, and the accompanying memorandum of law, William K. Harrington, the United States Trustee for Region 2, will move this Court before the Honorable Martin Glenn, United States Bankruptcy Judge, in the United States Bankruptcy Court, One Bowling Green, New York, NY 10004-1408, on **July 7, 2022 at 10:00 a.m.**, or as soon thereafter as counsel can be heard,  for an order removing the debtor-in-possession pursuant to 11 U.S.C. § 1185(a), and for such other relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE**, that the hearing shall take place virtually using Zoom for Government. If you wish to appear at the hearing, you must register your appearance utilizing the Electronic Appearance portal (https://ecf.nysb.uscourts.gov/cgibin/nysbAppearances.pl) located on the Court's website. Should you wish to appear at the Hearing, whether making a "live" or "listen only" appearance, you are required to register your appearance no later than 4:00 p.m. (prevailing Eastern Time) the business day before the Hearing. Only parties that are timely registered will received an email provided through eCourtAppearances with invitations to participate in the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Motion shall be filed with the Court and personally served on the United States Trustee, 201 Varick Street, Room

1006, New York, New York 10014, to the attention of Susan A. Arbeit, Esq., <u>no later than seven</u>

<u>(7) days prior to the return date</u>.  Such papers shall conform to the Federal Rules of Civil

Procedure and identify the party on whose behalf the papers are submitted, the nature of the

response, and the basis for such response.

Dated:  New York, New York
      June 15, 2022

<div style="margin-left:45%">

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:   <u>/s/ *Susan A. Arbeit*      </u>
       Susan A. Arbeit
       Mark Bruh
       Trial Attorneys
       201 Varick Street, Room 1006
       New York, New York 10014
       Tel. No. (212) 510-0500
       Fax. No. (212) 668-2255

</div>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re

Corinthian Communications Inc.,

                 Debtor.

------------------------------------------------------- x

: Chapter 11
:
: Case No. 22-10425 (MG)
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO REMOVE THE DEBTOR AS DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. <u>§ 1185(a)</u>**

# Table of Contents

I. INTRODUCTION………………………………………………………………………1

II. FACTUAL BACKGROUND………………………………………………………….2

A.    General Background……………………………………………………………2

B.    Paycheck Protection Program…………………………………………………..4

C.    Lack of Corporate Formalities…………………………………………………...8

D.    Lack of Transparency During the Bankruptcy …………………………………10

E.    Failure to Provide Requested Information to the United States Trustee and Subchapter V Trustee…………………………………………………………………….....11

III.    LEGAL ARGUMENT …………………………………………………………..12

A.    Statutory Predicate……………………………………………………………….12

*1.    The Debtor Fraudulently Obtained PPP Loans……………………………………13*

*2.    The Debtor's Management Has Engaged in Gross Management and Is Conflicted From Pursuing Any Claims Against Mr. Miller or Other Entities in the Corinthian Enterprise……………………………………………………………………………15*

*3.    The Debtor's Lack of Credibility and Transparency……………………………17*

IV.    CONCLUSION…………………………………………………………………..21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Ancona*, No. 14-10532 (MKV),
2016 WL 7868696, at *9 (Bankr. S.D.N.Y. Nov. 30, 2016)………………………………13,16

*In re Ashley River Consulting, LLC,* No. 14-13407 (MG),
2015 WL 1540941, at * 9 (Bankr. S.D.N.Y. Mar. 31, 2015)………………………………13

*In re Marvel Ent. Grp.*, 140 F.3d 463, 473 (3d Cir. 1998)…………………………………16

*In re McCorhill Publishing*, 73 B.R. 1013, 1017 (Bank. S.D.N.Y. 1987…………………...17

*In re Neosho Concrete Products Co.,* 20-30314,
2021 WL 1821444., at *8 (Bankr. W.D. Mo. May 6, 2021)……………………..…………12

*In re Peak Serum*, Inc., 623 B.R. 609, 614 n.1 (Bankr. D. Colo. 2020)…………..…………12

*In re Pittner*, 638 B.R. 255, 259 (Bankr. D. Mass. 2022)……………………………………12

*In re Sillerman*, 605 B.R. 631, 646-47 (Bankr. S.D.N.Y. 2019)…………………………….13,16

*In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007)…………………....13

**Statutes**

11 U.S.C. § 101………………………………………………………………………………….2

11 U.S.C. § 102(3)………………………………………………………………………………13

11 U.S.C. § 1104(a)(1)………………………………………………………………………...12,13

11 U.S.C. § 1183(a)……………………………………………………………………………….2

11 U.S.C. § 1183(b)……………………………………………………………………………...13

11 U.S.C. §
1185(a)……………………………………………………………………....1,2,12,14,16,17,18

TO: THE HONORABLE MARTIN GLENN
    UNITED STATES BANKRUPTCY JUDGE

    This memorandum of law is respectfully filed in support of the motion (the "**Motion**") of

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**") for

an order removing the Debtor as debtor in possession pursuant to 11 U.S.C. § 1185(a).  In

support thereof, the United States Trustee respectfully represents and states as follows:

## I. INTRODUCTION

    The United States Trustee is seeking the removal of the debtor in possession in this

subchapter V Chapter 11 case.  Pursuant to Section 1185(a) of the Bankruptcy Code, the Court

shall order the removal of a debtor in possession for cause, including fraud, dishonesty,

incompetence, or gross management of the affairs of the debtor, either before or after the

commencement of the case.  11 U.S.C. § 1185(a). As shown below, cause exists for the removal

of this Debtor as debtor in possession.

    Specifically, current management, the Debtor's President and 100% owner, dishonestly

and fraudulently obtained almost one million dollars of funds from the Small Business

Administration's PPP Loan Program by: (i) failing to disclose affiliated entities and (ii)

providing false information about the Debtor's gross receipts in connection with documents filed

with the SBA.  Further, the Debtor's President, together with others employed or retained by the

Debtor, have demonstrated gross mismanagement. The company's management has adopted a

lackadaisical attitude towards both corporate formality requirements and the Debtor's President's

fiduciary responsibility in managing multiple affiliated entities. This is particularly concerning

since the Debtor – one of four affiliated entities in Mr. Miller's Corinthian Enterprise -- has

fiduciary duties towards its creditors which are separate and apart from whatever duties and

responsibilities its related affiliates hold to their creditors.  Accordingly, it is clear that the

Debtor, under the corporate control of its President and owner, will not be able, as will be

required in this case, to exercise his fiduciary duty to creditors and others to, among other things, investigate: (1) *inter alia*, whether any of the PPP funds seemingly wrongfully obtained should be returned; (2) whether the non-debtor affiliates in the Corinthian Enterprise transferred the correct amount of funds to the Debtor to pay for non-debtor affiliate expenses; and (3) whether the President and owner has any basis to obtain past salary and commissions.[1]

Finally, the Debtor has not been transparent in managing the estate – both before and after the filing of the chapter 11 petition. The lack of transparency and candor is demonstrated in omissions and false information provided by the Debtor's current management in the PPP Loan Applications, Mr. Miller's 1007 Affidavit filed on the Petition Date, the Debtor's Schedules, and in the Debtor's Motion to Reject the Lease.

For all these reasons, the Debtor should be removed as debtor in possession for cause, pursuant to Section 1185(a) of the Bankruptcy Code.

## II. FACTUAL BACKGROUND

### A. General Background

1. On April 4, 2022 (the "**Petition Date**"), Corinthian Communications Inc. (the "**Debtor**") filed a voluntary petition (the "**Petition**") under Title 11 of the United States Code, 11 U.S.C. §§101 et seq. (the "**Bankruptcy Code**"). ECF No. 1.

2. On the Petition, the Debtor elected to proceed under Subchapter V of chapter 11. *Id*.

3. On April 5, 2022, the United States Trustee appointed Eric Huebscher (the "**Subchapter V Trustee**") as the trustee in this case pursuant to 1183(a) of the Bankruptcy Code. ECF No. 12.

---

[1] On the Petition Date (as defined below), the Debtor scheduled two claims for compensation for the Debtor's President totaling $1,251,500. These claims equal more than 51% of the Debtor's unsecured claims. On June 7, 2022, after being questioned regarding the same by the Court and other parties-in-interest, the Debtor removed the Debtor's President's claims from the Schedules.

The Debtor, an S corporation,[2] is 100% owned by Larry Miller who is the President and sole director of the Debtor. ECF Nos. 1 and 5; Declaration of Eric Huebscher in Support of the Motion ("**Huebscher Decl.**"), attached hereto as **<u>EXHIBIT 1</u>** at ¶ 1.

4.   The Debtor provides bookkeeping and payroll for three non-debtor affiliates: (a) Corinthian Trading Inc. ("**Trading**"), (b) Corinthian Media Inc. ("**Media**"), and (c) Broadcast Buying Services ("**Broadcast Buying**"), all of which are 100% owned by Mr. Miller. *See* Huebscher Decl. at 2; ECF No. 34 at ¶2.   The Debtor, Trading, Media, and Broadcast Buying (collectively, the "**Corinthian Enterprise**") have been in existence and working together for over forty years. *Id*.

5.   Media, Trading, and Broadcast Buying earn revenue from outside sources and these funds (less the cost of services) flow to the Debtor. Huebscher Decl. at ¶ 5; ECF No. 34 at ¶ 7. There is no intercompany agreement in place setting forth shared liabilities or monthly flow fund from Media, Trading, and Broadcast Buying to the Debtor. Huebscher Decl. at ¶ 6.

6.   On May 5, 2022, Mr. Miller testified on behalf of the Debtor at the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "**Initial 341 Meeting**"). ECF No. 12.  A copy of the transcript of the Initial 341 Meeting is attached to the Huebscher Decl. as *Exhibit B*. On July 9, 2022, Mr. Miller testified again on behalf of the Debtor at the adjourned meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "**Adjourned 341 Meeting**", and collectively with the Initial 341 Meeting, the "**341 Meetings**"). A copy of the transcript of the Adjourned 341 Meeting is attached to the Huebscher Decl. as *Exhibit C.*

---

[2] In the Supplemental 1007 Affidavit and in the 1007-2 Affidavit (both defined below), Mr. Miller states that the Debtor is a "Delaware corporation limited liability company." ECF No. 5.  However, according to New York Department of State, the Debtor is a New York corporation. *See* Huebscher Decl. at ¶ 1.

7. At the Adjourned 341 Meeting, Mr. Miller was joined by his accountant, Michael Block, who has institutional knowledge about the various entities in the Corinthian Enterprise.[3] Huebscher Decl. at ¶ 7

**B. Paycheck Protection Program**

8. In or about April 2020, the Debtor applied for a Paycheck Protection Program loan ("**PPP Loan**") through Bank of America as part of the Coronavirus Aid, Relief, and Economic Security (CARES) Act. On its PPP Loan Application (the "**First PPP Loan Application**"), the Debtor was required to answer a series of YES or NO questions. One of the questions read as follows:

> Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, we will request a listing of all Affiliates and a description of the relationship documented on a separate sheet identified as addendum A.

The Debtor checked "NO" in response to this question. Huebscher Decl. at ¶ 9.

9. A copy of the First PPP Loan Application is attached to the Huebscher Decl. as *Exhibit D*.[4]

10. At the 341 Meetings, Mr. Miller testified that Charlotte Pelcman, the Debtor's Office Manager, and Michael Block, the Debtor's accountant, had assisted him with filling out the First PPP Local Application. Huebscher Decl. at ¶ 10.

11. In or about May 2020, the Debtor received PPP loan proceeds in the amount of $448,985.00 (the "First Draw"), which amount was subsequently forgiven on September 20, 2021. *Id*. at ¶ 11.

---

[3] Mr. Block prepared the Debtor's, Media's, and Trading's tax returns for 2019 and 2020. Huebscher Decl. at ¶ 7. On information and belief, Mr. Block also appears to be or was a manager of Corinthian Dynasty Trust LLC, a company that in December 2014 owned certain membership interests of the landlord, 800 Eighth Avenue, LLC.

[4] The filed copy of the First PPP Loan Application as Exhibit D to the Huebscher Declaration is redacted to remove the Debtor's routing and account numbers and Mr. Miller's social security number and home address. The United States Trustee will supply an unredacted copy of this exhibit (and other redacted exhibits) to the Court.

12. In or about February 2021, the Debtor applied for a second draw of PPP Loans through Community Federal Savings Bank. *Id*. at ¶ 12. On its PPP Loan Application (the "**Second PPP Loan Application**", together with the First PPP Loan Application, the "**PPP Loan Applications**") the Debtor was required to answer a series of questions. One of the questions read as follows:

> Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A.

The Debtor typed "NO" in response to this question. Huebscher Decl. at ¶ 13. A copy of the Second Loan Application is attached to the Huebscher Decl. as *Exhibit F*.[5]

13. To obtain the second draw through the PPP Loan process, the Debtor needed to prove: (a) that it had previously received a first draw PPP loan and would or have used the full amount for authorized uses, (b) had no more than 300 employees, and (c) <u>could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020</u>. *See* https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan (underlined for emphasis).

14. On its Second Loan Application, the Debtor provided the following information:

| Second Draw Information | | | |
|---|---|---|---|
| First Draw SBA Loan Number: | 3160087302 | First Draw SBA Loan Amount: | $448,985.00 |
| Reference Quarter: | 3Q 2019 | Reference Quarter Gross Receipts: | $15,772,851.61 |
| 2020 Quarter: | 3Q 2020 | 2020 Quarter Gross Receipts: | $11,059,673.38 |
| | | Revenue Reduction: | 29.88% |

Huebscher Decl. at ¶ 14.

---

[5] The filed copy of the Second PPP Loan Application as *Exhibit F* to the Huebscher Declaration is redacted to remove Mr. Miller's social security number and home address and the SBA loan number.

15.  After the Initial 341 Meeting, the United States Trustee and the Subchapter V Trustee requested information regarding the above calculation. *Id*. at ¶ 16.

16.  In response, the Debtor produced an excel spreadsheet labeled Corinthian PPP 2nd Draw/Verification of Revenue Reduction (the "**Revenue Reduction Spreadsheet**"), a copy of which is attached as *Exhibit G* to Huebscher's Decl. at ¶ 17.

17.  The Revenue Reduction Spreadsheet shows that the Debtor used the quarterly gross receipts of Media, Broadcast Buying, and Trading, instead of the quarterly gross receipts of the Debtor, to calculate the reduction. *Id*. at ¶¶ 18 and 19. To date, the Debtor has not supplied any comparative quarterly gross receipts information for the Debtor. *Id.* at ¶ 18.

18.  The following testimony was provided at the Adjourned 341 Meeting regarding the revenue:

>           MS. ARBEIT:  Okay.  In response to IDI requests
> for verification of this revenue reduction for the second
> draw of the PPP loan, Counsel Eric Horn supplied my office
> and Mr. Huebscher this Excel spreadsheet showing the cash
> receipts analysis between 2019 and 2020.  Did you help
> prepare that?
>
>           MR. BLOCK:  I'm not sure what you are referring
> to.  So I don't know.
>
>           MS. ARBEIT:  Okay.  Mr. Horn, do you know who, who
> prepared the Excel spreadsheet that was sent to our office?
>
>           MR. HORN:  I believe it was Charlotte working with
> Michael, I believe.

*See* Exhibit C (34:5-16) to Huebscher Decl.

           MR. HUEBSCHER:  Yeah, I'm sorry.  Mr. Block, does Corinthian Media, Corinthian Trading, and Broadcast Buying Services file their own tax return?

           MR. BLOCK:  Yes.

           MR. HUEBSCHER:  And each of the four entities: Corinthian Communications, Corinthian Media, Corinthian Trading, Broadcast Buying Services all have their separate taxpayer IDs?

           MR. BLOCK:  Yeah.

           MR. HUEBSCHER:  So why didn't you use the taxpayer ID revenue for the Debtor for the applicants in the second PPP loan application that Ms. Arbeit asked you about?  If they're separately distinguished, legal entities with separate taxpayer IDs filing separate tax returns, why were -- why didn't you use the amount directly from the taxpayer ID associated with the applicant, which is the Debtor?

7

```
            MR. BLOCK:  Because Corinthian Media was the

entity with the substantial reduction in income and it had

no payroll.  The payroll was from the Corinthian

Communications.

            MR. HUEBSCHER:  Corinthian Media is not the

applicant, right?

            MR. BLOCK:  Correct.

            MR. HUEBSCHER:  And Corinthian Media didn't file,

didn't apply for its own PPP loan, correct?

            MR. BLOCK:  Correct.
```

Exhibit C (37:1-25, 38:1) to Huebscher Decl.

19.  No entity in the Corinthian Enterprise, besides the Debtor, applied for PPP loans.

Huebscher Decl. at ¶ 23.

20.  In March 2021, the Debtor received $449,331.80 (the "**Second Draw**"), which was

subsequently forgiven on November 29, 2021. *Id*. at ¶ 24.

**C. Lack of Corporate Formalities**

21.  Each entity in the Corinthian Enterprise is a separate and distinct S corporation. Each

entity has its own EIN, and each entity files its own tax returns. *Id*. at ¶ 25.[6]

22.   Prior to the COVID-19 Pandemic (the "**Pandemic**"), the Corinthian Enterprise shared

office space on the fifth floor of 500 8th Avenue, New York, NY 10018. Huebscher Decl. at ¶27.

---

[6] To date, the United States Trustee has not received, despite requesting, (a) a copy of Broadcast Buying's formation documents, (b) proof that it is an active corporation, and (c) corporate tax returns.

Post Pandemic, the Corinthian Enterprise shares a post office box in New York, NY 10016. *Id.* at ¶ 27.

23. The Debtor, however, is the only entity within the Corinthian Enterprise that has employees. Huebscher Decl. at ¶ 2. At the 341 Meetings, Mr. Miller testified that the Debtor has approximately 30 employees, 60% of whom work primarily for Media's business, 25% of whom work primarily for Broadcast Buying's business, 3% of whom work primarily for Trading's business, and the remainder who perform back-office work. *See Id.* at ¶ 28. Mr. Miller also testified that despite that Media, Trading, and Broadcast Buying utilizes the Debtor's employees, there is no intercompany agreement in place setting forth shared liabilities or monthly fund flow to the Debtor. Huebscher Decl. at ¶ 6.

24. According to Schedule H, Media, Trading, and Broadcast Buying are not liable for any prepetition debt associated with the Debtor's employees or lease obligations. ECF No. 1 at 23.

25. The Debtor's general liability insurance is held in the name of the Debtor and Broadcast Buying. Huebscher Decl. at ¶ 30.

26. The Debtor has no employment agreements with its employees and there is no agreement setting forth Mr. Miller's compensation structure. *Id. at* ¶ 31. Mr. Miller provided the following testimony at the Adjourned 341 Meeting:

MR. HUEBSCHER:  Ms. Arbeit, Eric Huebscher, just one follow-up question for Mr. Miller.  Mr. Miller, do you have a contract with the company or an employment agreement?

MR. MILLER:  Nobody does.

MR. HUEBSCHER:  I was asking about you.

MR. MILLER:  No, nobody.

MR. HUEBSCHER:  So, is the commission and salaries, how is that memorialized?

MR. MILLER:  By a good old fashioned -- it's memorialized with a handshake.  So there are people that have worked for me for 30 years that if you refuse to pay them the commissions and, you know, all they can do is say that's what you did before, that was our deal.  Nobody's done that.

Exhibit C (46:8-21) to Huebscher Decl.

27.  The Debtor's employees have email addresses with the domain name "mediabuying.com" and prior to the Pandemic, all the Debtor's employees had phone extensions linked to a shared main number for the Corinthian Enterprise. Huebscher Decl. at ¶ 27.

28.  Mr. Miller testified that he does not recall ever being asked to hold board meetings for the Debtor. *Id*. at ¶ 32.

**D. Lack of Transparency During the Bankruptcy**

29.  The Declaration of Larry Miller Pursuant to Local Bankruptcy Rule 1007-2 (the "**1007 Affidavit**"), filed on the Petition Date, states that "[s]ince 1979, [t]he Debtor has been providing

bookkeeping and payroll for a media buying and trading company." The "media buying and trading company" was not defined in the 1007 Affidavit. *See* ECF No. 5. Similarly, neither the 1007 Affidavit nor the Debtor's Motion Pursuant to 11 U.S.C. § 365 to Reject Its Lease (ECF No. 6) disclosed that a percentage of the membership interests of 500 Eighth Avenue, LLC, the Debtor's landlord, are owned by a trust for Mr. Miller's children.

30.  On June 14, 2022, the Debtor filed a Supplemental Declaration of Larry Miller Pursuant to Local Bankruptcy Rule 1007-2 (the "Supplemental 1007 Affidavit"), addressing the deficiencies in para. 29 above, however, Mr. Miller failed to mention in the Supplemental 1007 Affidavit the name of the trust for Mr. Miller's children and information on who is the manager of said trust. *See* ECF No. 34.

31.  On June 7, 2022, the Debtor amended Schedules E/F to delete two unsecured creditor claims held by Mr. Miller: (a) one for $1,236,350.00 for "outstanding compensation" and (b) one for $15,150 for "compensation". In the Supplemental 1007 Affidavit, Mr. Miller stated that he believes his claim is valid and that he is consulting with independent advisors to make a determination of whether a proof of claim for these amounts should be filed in advance of the applicable bar date.  ECF No. 34 at ¶ 16.

**E. Failure to Provide Requested Information to the United States Trustee and Subchapter V Trustee**

32.  To date, the Debtor has not provided the following information to the United States Trustee, despite his requests:

- Formation documents for Broadcast Buying and information on whether it is an active corporation.

- 2019 and 2020 federal tax returns for Broadcast Buying.

- A breakdown of four large expenses listed in the Debtor's federal tax returns: (a) Consulting Services, (b) Legal & Professional Fees, (c) Rating Services, and (d) Insurance.

- Backup of "Trust" disbursements from the Debtor's bank account: $7,314.70 (on 4/19/22), $7.314.70 (on 4/26/20).[7]

- Cancelled checks from April 2022 monthly operating report.

- Information regarding the 40 other limited liability companies wholly owned by Mr. Miller.

- Information on whether there would be a reduction in premiums if Broadcast Buying was removed as an insured from the Debtor's general liability insurance policy.

Huebscher Decl. at ¶ 37.

## III. LEGAL ARGUMENT

### THE DEBTOR SHOULD BE REMOVED AS DEBTOR IN POSSESSION

**A. Statutory Predicate**

Section 1185(a) of the Bankruptcy Code provides that "[o]n request of a party in interest . . . the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case[.]" 11 U.S.C. § 1185(a).

Although there is no governing authority establishing the standards that constitute "cause" under section 1185(a), this Court can consider analogous authority under section 1104(a)(1) because it uses the same language as 1185(a). *In re Neosho Concrete Products Co.,* 20-30314, 2021 WL 1821444., at *8 (Bankr. W.D. Mo. May 6, 2021) (citing *In re Peak Serum,* *Inc.,* 623 B.R. 609, 614 n.1 (Bankr. D. Colo. 2020)); see also, *In re Pittner,* 638 B.R. 255, 259 (Bankr. D. Mass. 2022) ("Section 1104 does not apply in a case under subchapter V, but subchapter V contains its own parallel provision in 1185(a)'s authorization for the court to remove a debtor from possession for cause[.]").

---

[7] Debtor's proposed counsel advised the United States Trustee and Subchapter V Trustee that these disbursements are 401(k) contributions but has not provided backup information as requested.

The categories enumerated in 11 U.S.C. § 1104(a)(1) refer to pre or post-petition fraud, dishonestly, incompetence, or gross mismanagement, but pursuant to the Code's rules of construction, "includes' and 'including' are not limiting[.]" 11 U.S.C. § 102(3).  Other grounds warranting the appointment of a trustee include "conflicts of interest, inappropriate relations between corporate parents and subsidiaries, misuse of assets and funds, inadequate record keepings and reporting, failure to disclose relevant and material information, lack of credibility and creditor confidence, and various other similar instances of cause." *In re Ancona*, No. 14-10532 (MKV), 2016 WL 7868696, at *9 (Bankr. S.D.N.Y. Nov. 30, 2016) (citing *In re Ashley River Consulting, LLC,* No. 14-13407 (MG), 2015 WL 1540941, at * 9 (Bankr. S.D.N.Y. Mar. 31, 2015)). If a debtor defaults in its responsibilities as an estate fiduciary, the debtor may be dispossessed of control of its business and a chapter 11 trustee should be appointed. *Id*. at 10. Similarly, where the debtor has questionable inter-company dealings and the principal of the debtor occupies conflicting positions in the other affiliated companies, a trustee should be appointed. *See In re Sillerman*, 605 B.R. 631, 646-47 (Bankr. S.D.N.Y. 2019).

"The party seeking appointment of a chapter 11 trustee has the burden of showing, by clear and convincing evidence cause under § 1104(a)(1)[.]" *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007). Section 1183(b) provides that "[t]he [subchapter V] trustee shall – (5) if the debtor ceases to be a debtor in possession, perform the duties specified in section 704(a)(8) and paragraphs (1), (2), and (6) of section 1106(a) of this time, including operating the business of the debtor." 11 U.S.C. § 1183(b)(5).

1. ***The Debtor Fraudulently Obtained PPP Loans***

There is cause to remove the Debtor as debtor in possession based on fraud. Prepetition the Debtor received almost one million dollars based on two PPP Loan Applications which contained incorrect information. *See* Huebscher Decl. at ¶¶ 9, 13, 14, 18, 19-21. On its First PPP

Loan Application with Bank of America, the Debtor answered "No" to the question "is the Applicant or any owner of the Applicant an owner of any other business, or have common management with any other business?" *See Id*. at ¶ 9.  If the Debtor had not incorrectly answered this question, the Debtor would have had to disclose the entities in the Corinthian Enterprise and the forty other companies owned by Mr. Miller, along with a description of the relationship with the Debtor.

On its Second PPP Loan Application with Community Federal Savings Bank, the Debtor again failed to provide accurate information and typed "No" in response to the question "is the Applicant or any owner of the Applicant an owner of any other business?" *See Id.* at ¶ 13.  As mentioned previously, the Debtor was only eligible to receive the Second Draw if it had at least a 25% reduction in gross receipts between 2019 and 2020. To obtain the required numbers, the Debtor fraudulently reported the quarterly gross receipts of Media, Broadcast Buying, and Trading (not the Debtor). *See* Huebscher Decl. at ¶ 18. The calculation showed a 29.88% revenue reduction.  *See Id*. at ¶ 14.

It is highly unlikely that Mr. Miller aided by Charlotte Pelcman and Michael Block mistakenly failed to disclose the fact that the Debtor was part of a larger group of entities. Mr. Miller was aware of the real information. The Debtor under the direction of Mr. Miller affirmatively misled the SBA by representing that it was an independent entity and used Media's, Trading's, and Broadcast Buying's gross receipts to justify its Second Draw. To date, Mr. Miller, along with Ms. Pelcman and Mr. Block, are still managing the Debtor and making its business decisions during the Bankruptcy case. Accordingly, cause exists to remove the Debtor as debtor in possession under 11 U.S.C. § 1185.

### *2. The Debtor's Management Has Engaged in Gross Mismanagement and Is Conflicted from Pursuing Any Claims Against Mr. Miller or Other Entities in the Corinthian Enterprise*

The Corinthian Enterprise is tightly controlled by its principal, Mr. Miller. There are very few, if any, corporate formalities followed amongst the separate entities in the Corinthian Enterprise. Prior to the pandemic, the Corinthian Enterprise operated from the fifth floor of 500 Eighth Avenue, New York, NY, the employees (who are employed by the Debtor) worked for the Corinthian Enterprise as a whole (some working exclusively for Media, Trading, and Broadcast Buying), the employees' email addresses used the same domain name regardless of what business section each employee worked for (_____@mediabuying.com) and Charlotte Pelcman, the office manager, along with her assistant worked for the Debtor and its non-debtor related affiliates. *See* Huebscher Decl. at ¶¶ 27 and 28.

While the Debtor appears to have a separate bank account from other entities in the Corinthian Enterprise, money flows from Media, Trading, and Broadcast Buying to the Debtor (and not the other way around). *See* ECF No. 34 at ¶ 7; Huebscher Decl. at ¶ 5. The Debtor provides payroll and bookkeeping services to Media, Trading, and Broadcast Buying, and does not have any external clients outside of the Corinthian Enterprise. *Id.* The Debtor is obligated to pay its employees, pay rent on the 800 Fifth Avenue location, and pay for general liability insurance for both itself and Broadcast Buying. *See* ECF No. 35, Huebscher Decl. 30.  In addition, from a review of Statements 1-4 of the 2019 and 2020 1120-S Tax Returns of the Debtor attached as Exhibits J and K, respectively, to the Huebscher Declaration, it appears that the Debtor pays for rating services that are used for the Media, Trading, and/or Broadcast Buying businesses, and pays very large sums for consultants, legal and professional fees. *See* Huebscher Decl. at ¶¶ 34 and 35.

As mentioned previously, there is no intercompany agreement that sets forth how much the Debtor should receive from Media, Trading, and Broadcast Buying on a periodic basis. Huebscher Decl. at ¶ 6. In addition, the Debtor's employees do not have employment agreements that describe their duties, salary, or commission structure. *See* Huebscher Decl. at ¶ 31. Similarly, there is no agreement that documents if Mr. Miller is entitled to any type of salary or commission from the Debtor. *Id.*

Mr. Miller's lackadaisical attitude towards corporate formality requirements, coupled with what appears to be outright fraud with respect to the PPP Loans, creates a conflict of interest. Based on information and belief, it will be necessary, *inter alia*, for the Debtor to dialogue with the SBA/U.S. Attorney's Office to determine if the PPP funds will need to be clawed back, review the expenses paid by the Debtor on behalf of the Corinthian Enterprise to make sure the transfers to the Debtor were sufficient to cover the expenses, investigate whether Mr. Miller has any basis to obtain past salary and commissions. It would be naïve to expect Mr. Miller, as sole shareholder and principal, to direct the Debtor to take actions consistent with its responsibilities as a debtor in possession when such actions are against his best interest. The parties and the Court can hardly expect Mr. Miller to investigate his own actions.

Based on the facts, there is ample cause to remove the Debtor as debtor in possession under 11 U.S.C. § 1185. A debtor has a fiduciary duty to make impartial investigations and decisions in pursuing claims and objecting to claims on behalf of the estate. *In re Ancona*, 2016 WL at 10. When a debtor is not able to do that because such actions would be contrary to the Debtor's principal's best interest, a trustee should be appointed. *See e.g. In re Marvel Ent. Grp.*, 140 F.3d 463, 473 (3d Cir. 1998) (appointing a trustee when the debtor "would be placed in an awkward position of evaluating their own indenture and debt claims"); *In re Sillerman*, 605 B.R. at 646-47 (appointing a trustee when the debtor was conflicted from bringing avoidance actions

against his non-debtor affiliated entities and family members); *In re McCorhill Publishing*, 73 B.R. 1013, 1017 (Bank. S.D.N.Y. 1987) (appointing a trustee when a debtor had paid for expenses for non-debtor affiliates and the debtor's directors and officers had conflicting interests in such affiliates).

### 3. The Debtor's Lack of Credibility and Transparency

The Debtor has not been transparent in managing the estate and its representations lack credibility. To wit, (1) the Debtor failed to disclose in its 1007 Affidavit that it is part of the Corinthian Enterprise and that it was not a freestanding business on its own; (2) the Debtor failed to disclose in its Motion to Reject the Lease that the Landlord was owned, in part, by a trust owned by Mr. Miller's children; and (3) the Debtor's April monthly operating report did not include copies of its checks written. It is also worrisome that the Debtor failed to list Media, Trading, or Broadcast Buying as Codebtors on Schedule H. ECF No. 1 at 23.

Since the Petition Date, the Debtor has not been forthright with its responses to inquiries from the United States Trustee and Subchapter V Trustee. This is not how the bankruptcy process should function, the debtor has an obligation to make a full disclosure in its public filings and in response to requests from the United States Trustee/Subchapter V Trustee. Transparency is necessary for the Court and parties in interest to have full confidence in the Debtor when reviewing pleadings. This is especially the case in a Subchapter V case, where the Subchapter V Trustee is tasked with assisting the Debtor with various responsibilities, including developing a consensual plan of reorganization. See 11 U.S.C. § 1183(b).

It is imperative that the Court remove the Debtor as debtor in possession for cause under § 1185(a) and the Subchapter V Trustee's duties be expanded under 11 U.S.C. § 1183(b)(5) to stabilize operations, investigate the various issues raised above in depth, and decide if the Debtor and/or the Corinthian Enterprise is a business that can be sold as a going concern or whether it

should be liquidated. Eric Huebscher is familiar with the case and its business and has relevant

experiences, including numerous appointments and assignments over the past 15 years.

Huebscher Decl. at ¶ 37.

## IV. CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court enter the

order, attached hereto as **EXHIBIT 2**, removing the debtor in possession pursuant to 11 U.S.C. §

1185 and granting such other relief as may be deemed just and proper.

Dated: New York, New York
      June 15, 2022

                              WILLIAM K. HARRINGTON
                              UNITED STATES TRUSTEE

                By:    */s/ Susan A. Arbeit*
                        Susan A. Arbeit
                        Mark Bruh
                        Trial Attorneys
                        201 Varick Street, Room 1006
                        New York, New York 10014