**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
101 Eisenhower Parkway, STE 412
Roseland, New Jersey 07068
Tel. (973) 287-5006
Fax (973) 226-4105

*Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V Small Business) |
| Corinthian Communications Inc., | Case No. 22-10425 (MG) |
| Debtor. | Judge Martin Glenn |

**CHAPTER 11 PLAN OF LIQUIDATION**
**(SUBCHAPTER V)**

Dated: July 5, 2022

Eric H. Horn, Esq.
Heike M. Vogel, Esq.
**A.Y. Strauss LLC**
101 Eisenhower Parkway, STE 412
Roseland, New Jersey 07068
Tel. (973) 287-5006
Fax (973) 226-4105

*Counsel to the Debtor and*
*Debtor-in-Possession*

# TABLE OF CONTENTS

Introduction ……………………………..………………………………………………...1

The Plan Confirmation Hearing…..…….…..………………………………………...…1-2
Summary of the Plan and Distributions to Creditors ……………………………..………2

Article I – History of the Business Operations of the Debtor …………………………….………2

       History and Nature of the Debtor's Business……………………………………..2-3
       Events Leading to the Filing of Bankruptcy Case……………………………………...3
       Filing of the Debtor's Subchapter V Case …………………………………………..4
       Legal Structure and Ownership …………………………………………………..4
       Debtor's Assets …………………………………………………………………..4
       Debtor's Liabilities …………………………………………………………..4
       Significant Events During the Bankruptcy Case ……………………………………4-5
       Causes of Action…………………………………………………………………..…5

Article II – The Plan…………………………………………………………………..5-6

       Unclassified Claims…………………………………………………………………..…6-8
       Classes of Claims and Equity Interests …………………………………………..…8-10
       Estimated Number and Amount of Claims Objections ………………………………10
       Treatment of Executory Contracts and Unexpired Leases……………………………10
       Means for Implementation of the Plan ……………………………………………..…10
       Payments …………………………………………………………………………..…10
       Post-Confirmation Management …………………………………………………......10
       Administrative Expense Bar Date ……………………………………………….........11
       Tax Consequences of the Plan. ………………………………………………….…11
       Projections in Support of Debtor's Ability to Make Payments Under
       the Proposed Plan …………………………………………………………………..12

Article III – Feasibility of Plan ……………………………………………………….…12

       Ability to Initially Fund Plan ……………………………………………………..12
       Ability to Make Future Plan Payments and Operate Without Further
       Reorganization / Liquidation …………………………………………………………12

Article IV – Liquidation Analysais ……………………………………………..…12

Article V – General Provisions …………………………………………………..….....13

       Title to Assets …………………………………………………………………........13
       Binding Effect ……………………………………………………………….....…13
       Retention of Jurisdiction ……………………………………………………..…13-15

Effecting Documents, Further Transactions, Timing ……………....………………..15
Governing Law ………………………………………………………………………15
Modification and Amendments ………………………………….…………………15
Revocation, Withdrawal, or Non-Consummation……………….…………………15
Entire Agreement…………………………………………………………..........15-16
Severability…………………………………………………………………………16
Exhibits……………………………………………………………………………16
Conflicts……………………………………………………………………………16
Final Decree…………………………………………………………………....…16
Conditions to Effectiveness……………………………………………………16-17
Distributions……………………………………………………………………..17-18

Article VI – Effect on the Plan on Claims, Interests, and Causes of Action……………………..19

Binding Effect……………………………………………………………………19
Vesting of Assets…………………………………………………………………19
Discharge…………………………………………………………………………19
Releases by the Debtor…………………………………………………….....19-20
Releases by Holders of Claims……………………………………………………20
Injunction………………………………………………………………………..20-21

Article VII – Attachments …………………………………………………….………21

Article VIII – Frequently Asked Questions ……………………………………….………22-23

Article IX – Definitions ……………………………………………………....………23-28

# INTRODUCTION

Corinthian Communications Inc., a debtor and debtor-in-possession (the "***Debtor***"), proposes the following chapter 11 plan of reorganization (the "***Plan***") pursuant to Subchapter V of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"). Capitalized terms used in the Plan have the meanings ascribed to such terms in Article 9 of the Plan.

This Plan provides creditors and interest holders of the Debtor with information to enable them to make an informed judgment concerning the method by which the Debtor's plan to reorganize and emerge from bankruptcy. If the Court confirms the Plan, it will be binding on the Debtor, its creditors, equity holder, and other interested parties.

This Plan provides for a reorganization of the Debtor to preserve its going concern value and future business. This Plan proposes to pay creditors using the Net Disposable Income of the Debtor and the Non-Debtor Entities (as defined below) over the three-year period after the Effective Date. The Plan will allow non-insider Class 3 General Unsecured Creditors to recover a significant amount more than such creditors would otherwise receive in a hypothetical Chapter 7 liquidation. Indeed, based on the amount of the Debtor's assets, as set forth in the Schedules, as amended, and the liabilities, as set forth in the Schedules, as amended, under a liquidation scenario, Allowed Class 3 Claims will receive an estimated 1.5% (one and five tenths of a percent) recovery, as opposed to the exponentially greater amount proposed by this Plan. It is important to keep in mind that, as set forth below, the deadline for filing proofs of claim for non-governmental entities as well as governmental entities has not passed, and the Debtor's liabilities could potentially be more than those set forth in the Schedules.

The Debtor believes this Plan represents the best possible return to holders of Claims. The Debtor also believes this Plan will successfully reorganize the Debtor and that confirmation of the Plan is in the best interests of the Debtor, its Creditors, and other parties in interest. Accordingly, the Debtor strongly urges you to vote in favor of this Plan.

## THE PLAN CONFIRMATION HEARING

Pursuant to Section 1128 of the Bankruptcy Code, a Confirmation Hearing will be held on [•] [•], 2022 at [•]:[•] [•].m. Eastern Time. The Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection and the amount of the claim or number of shares of stock held by the objecting party. Any such objection must be filed with the Court and served so that it is received by the Court, the Office of the United States Trustee, the Subchapter V Trustee, and Counsel for the Debtor on or before [•] [•], 2022. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Failure by a creditor or interest holder to timely file an objection to the Plan or timely cast a ballot in accordance with the Plan Scheduling Order shall constitute an agreement by silence to accept the terms contained in this Plan.

Any interested party desiring further information about the Plan should contact counsel of record for the Debtor, A.Y. Strauss LLC, 101 Eisenhower Parkway, Suite 412, Roseland, New Jersey 07068; Attention: Eric H. Horn, Esq. and Heike M. Vogel, Esq.; telephone: (973) 287-5006; facsimile: (973) 226-4104; email: ehorn@aystrauss.com, hvogel@aystrauss.com.

### SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

Corinthian Communications Inc., a debtor and debtor-in-possession, proposes this "Small Business" Chapter 11 Plan of Liquidation. The Debtor is a New York corporation, which prior to the date of the filing of its chapter 11 case, was located at 500 8ᵗʰ Avenue in Manhattan, New York. As set forth below, the Debtor is proposing a plan pursuant to which administrative expense claimants as well as priority unsecured claims will be paid in full on the Effective Date. With regard to general unsecured claims, such will be satisfied pursuant to a payment stream over the course of three years based on the Debtor's projected disposable income.

### ARTICLE I
### HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

1.1.    **History of and Nature of the Debtor's Business.**

The Debtor was founded by Larry Miller in 1974 as a full-service media planning and buying company dedicated to serving the New York City market. At the start, Mr. Miller was the sole employee and ran all aspects of the Debtor's business. The Debtor's business expanded over time, and with the addition of new employees and business lines, the corporate structure of the business evolved. The Debtor now exists to provide employees and office services to the following non-debtor entities: Corinthian Trading Inc.; Corinthian Media Inc; and Broadcast Buying Services (each a "**Non-Debtor Entity**," collectively the "**Non-Debtor Entities**," and together with the Debtor, the "**Corinthian Companies**"). Mr. Miller is the sole owner of each of the Corinthian Companies and is the President of the Debtor.

The Non-Debtor entities are operating companies that provide media services to third-party clients. For example, clients engage Corinthian Media to provide media planning and buying services for their advertising campaigns. Broadcast Buying Services operates similarly, focusing on clients that require direct response marketing and advertising services. Corinthian Trading's business is somewhat different. It primarily engages in barter transactions to acquire media time at a discount and then sells that media time to Corinthian Media to make available to its clients. For its part, the Debtor (Corinthian Communications) is the service entity that provides employees and administrative services to the Non-Debtor Entities. The Debtor employs all of the employees who support the operations of, and serve clients through, the Non-Debtor Entities. As the Non-Debtor Entities earn revenues from their operating activities, they pay the Debtor to cover payroll and other overhead expenses for all of the Corinthian Companies.

The Corinthian Companies represent Larry Miller's life's work. They are also the professional home of a group of seasoned, dedicated professionals, the vast majority of whom have been with the Corinthian Companies for over a decade, and many of whom have been with the Corinthian Companies for over 30 years.

The Non-Debtor Entities do not have any employees. The Debtor estimates its monthly obligation to its employees to be approximately $252,000. Such amounts do not include commissions which amounts range depending on the amount of sales generated by the Non-Debtor Entities.

## 1.2. **Events Leading to the Filing of the Bankruptcy Case.**

Even before the COVID-19 pandemic began in March 2020, the Corinthian Companies' business showed signs of decline starting in approximately 2015. As the sole owner, Mr. Miller elected not to receive any compensation or profit distributions for the Debtor or any Non-Debtor entity since that time. He nevertheless worked hard to serve the Corinthian Companies' clients and preserve the jobs of the Debtor's long-serving employees.

The Debtor's employees have made sacrifices as well. More than half have not received raises in more than a decade. Others have taken recent pay cuts to help right-size the business and preserve jobs. The Debtor's employees with the most valuable client relationships have so far chosen to stay with Debtor despite the business's struggles.

The COVID-19 pandemic made matters far worse. Broadway theaters and shows are an important part of the Corinthian Companies' core client base, representing roughly a third of total revenue in 2019. With practically no Broadway shows operating until relatively recently, a significant portion of the business revenue evaporated overnight. Revenue from the Corinthian Companies' Broadway / theater business segment dropped 78% from approximately $20.2 million in 2019 to approximately $4.5 million in 2020.

### a. *The Paycheck Protection Program Loans*

The relief afforded by the Payroll Protection Program ("***PPP***") was a much-needed lifeline for the Corinthian Companies' business and the Debtor's employees. On May 8, 2020, the Debtor received a first draw PPP loan of $448,985.00. All of the loan proceeds were used to pay the Debtor's payroll, and the loan was forgiven on September 20, 2021. On March 9, 2021, the Debtor received a second draw PPP loan of $449,331.70. As with the first draw loan, all loan proceeds were used to pay the Debtor's payroll. The second draw PPP loan was forgiven on November 29, 2021.

None of the Non-Debtor Entities applied for or received their own PPP loans. Nor did any of the Non-Debtor Entities receive any of the proceeds from the PPP loans issued to the Debtor. All PPP funds that the Debtor received were used to pay its employees and preserve their jobs— the usage that the funds were made available for. Mr. Miller personally did not receive any of the PPP loan proceeds whatsoever.

### b. *The Debtor's Former Lease*

Additionally, during COVID-19, the Debtor was unable to use its former office space located 500 8th Avenue in Manhattan, New York (the "***Premises***"). By way of background, the Debtor, as tenant, and 500 Eighth Avenue LLC, as landlord (the "***Landlord***"), were parties to that certain lease dated as of November 30, 2006 (as such may have been modified or amended, the

"***Lease***"), pursuant to which the Debtor rented the space at the Premises. Additionally, by way of background, the Landlord is owned by different members – in particular approximately 19.5% is owned by a trust for the benefit of Larry Miller's children and decedents.

During COVID-19, the Debtor was unable to use the Premises. The Debtor believes that under the terms of the Lease it was excused from paying rent during the COVID pandemic. The Landlord took a different view. Despite various attempts to negotiate with the Landlord, as the Landlord did with other tenants at the Premises, Landlord's agent (Walter & Samuels) would not entertain discussions with the Debtor or Mr. Miller.

Prior to the commencement of the Subchapter V case, the Landlord commenced an action in the NYC Civil Court, Non-Housing Division, Case No. LT-308684-21 seeking eviction and monetary damages against the Debtor. On the eve of the hearing on Landlord's summary judgment motion, the Debtor commenced this Subchapter V case.

Thus, the reason for the filing stems from the drop in revenue as a result of COVID 19 coupled with the Debtor's inability to pay the Landlord amounts that the Landlord was asserting as owing. The point of the filing was to use the sub-chapter v process to restructure the Debtor's affairs.

    1.3.    <u>Filing of the Debtor's Subchapter V Case</u>.

On April 4, 2022, the Debtor filed a voluntary petition for relief under Subchapter V of chapter 11 of Title 11 of the United States Code. This is a Small Business Recovery Act case and is pending in the United States Bankruptcy Court, Southern District of New York (Manhattan). This case was assigned to Judge Martin Glenn and was given Case No. 22-10425 (MG). The Debtor continues to operate its business and manage its property as a debtor-in-possession. in accordance with §§ 1107 and 1108 of the Bankruptcy Code.

    1.4.    <u>Legal Structure and Ownership</u>.

As noted above, the Debtor is New York corporation, and the equity is 100% owned by Larry Miller. As noted above, each of the Non-Debtor Entities' equity is 100% owned by Larry Miller.

    1.5.    <u>Debtor's Assets</u>.

The Debtor's assets are listed on **Exhibit "A"** to this Plan.

    1.6.    <u>Debtor's Liabilities</u>.

The Debtor's liabilities are listed on **Exhibit "B"** to this Plan.

    1.7.    <u>Significant Events During the Bankruptcy Case</u>.

During the course of the Subchapter V Case, the following milestones have occurred:

- April 4, 2022 – Debtor's Schedules of Assets and Liabilities and Statement of

Financial Affairs [Docket No. 1]; Schedule E and Schedule F were subsequently amended on June 7, 2022 [Docket No. 30].

- On April 5, 2022, the United States Trustee appointed Eric Huebscher, as the Subchapter V trustee in this case under § 1183(a) of the Bankruptcy Code.

- May 12, 2022 – Application to approve A.Y. Strauss LLC as counsel to the Debtor [Docket No. 24].

- May 17, 2022 – Motion to set bar dates [Docket No. 26].

- June 15, 2022 – Order approving the retention of A.Y. Strauss LLC as counsel to the Debtor [Docket No. 35].

- June 15, 2022 – Order establishing August 1, 2022 as the general claims bar date and October 3, 2022 as the governmental claims bar date [Docket No. 36].

- June 15, 2022, Office of the United States Trustee's motion to remove the Debtor from Possession [Docket No. 37].

- July 5, 2022 - Chapter 11 Small Business Subchapter V Plan [Docket No. 51].

Monthly operating reports for both April 2022 and May 2022 are filed, and the next operating report is due for filing on July 20, 2022.

Additionally, a meeting of creditors pursuant to § 341(a) of the Bankruptcy Code was held on May 5, 2022 and continued on June 9, 2022. Less than a week after the continued 341 meeting, the UST filed a motion, as noted in the bullet points above, relying on the declaration of Eric Huebscher to remove the Debtor from possession. On June 30, 2022, the Debtor's Landlord filed a joinder to the UST's motion [Docket No. 44]. On June 30, 2022, the Debtor filed its opposition to the removal motion [Docket No. 47]. A hearing on this matter is scheduled for July 7, 2022.

1.8. <u>Causes of Action</u>. The Debtor will explore any actions it has, including any preference actions or other avoidance actions that are feasible to pursue and could yield a net recovery to the Estate (*i.e.*, beyond the administrative expense necessary to obtain a recovery) and will commence such actions if appropriate. If there are any recoveries, the net recoveries will go to fund the payouts under the Plan. As of this writing, the Debtor has not identified any such actions. Its investigation of these matters is ongoing.

**ARTICLE II**
**<u>THE PLAN</u>**

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class or purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

2.1.  <u>Unclassified Claims</u>.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.  *Administrative Expenses*

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.  If the Debtor trades in the ordinary course of business following its filing of the chapter 11 case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.  If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.  Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon

Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|-------------------|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Paid in full on the Effective Date. |
| Administrative Tax Claim | $0.00 | Paid in full on the Effective Date. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | N/A |
| Professional fees, as approved by the Bankruptcy Court | $100,000.00 (EST) | Upon application under § 330 and after Bankruptcy Court approval, paid in full on the Effective Date. |
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date. |
| Other Administrative Expenses | $0.00 | Paid in full on the Effective Date. |
| United States Trustee Fees | N/A | N/A |

| | | |
|---|---|---|
| Subchapter V Trustee Fees | $10,000.00 (EST) | Upon application under § 330 and after Bankruptcy Court approval, paid in full on the Effective Date. |
| **TOTAL** | **$110,000.00** | |

B. *Priority Tax Claims.*

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| | $0.00 | | Paid in full on the Effective Date. |

2.2. <u>Classes of Claims and Equity Interests</u>.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A. Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The Debtor does not have any secured claims.

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
| 1 | N/A | N/A | No | $0.00 |

### B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

Besides Priority Tax Claims addressed above, the Debtor owes certain employee amounts that are subject to priority.

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
| 2 | Priority Claims (non-insider employees) | No | No | Paid in full on the Effective Date. |

### C. Class of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 2 which contains general unsecured Claims against the Debtor.

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3A | Employee Claims | Impaired | *Pro rata* of disposable income paid over 3 years |
| 3B | Other General Unsecured Claims | Impaired | *Pro rata* of disposable income paid over 3 years |

D.  Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company, the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The Debtor's Equity Interest holder will retain his equity.

2.3.  <u>Estimated Number and Amount of Claims Objections</u>.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

2.4.  <u>Treatment of Executory Contracts and Unexpired Leases</u>.

Except for any executory contract or unexpired lease that was previously assumed or rejected by the Debtor pursuant to section 365 of the Bankruptcy Code shall be deemed rejected pursuant to section 365 of the Bankruptcy Code.  The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases.

2.5.  <u>Means for Implementation of the Plan</u>.

The Debtor will fund the administrative expense claims and priority claims from its operations and that of the Non-Debtor Entities at Plan Confirmation.  With regard to general unsecured claims, the Debtor will provide a payment stream to such creditors based on a disposable income analysis which is annexed to this Plan.

2.6.  <u>Payments</u>.

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

2.7.    Post-Confirmation Management.

Under this Plan, the Debtor's management will stay in place post-confirmation.  This Plan is contingent on the Bankruptcy Court denying the UST's motion to remove the Debtor from possession.

2.8.    Administrative Expense Bar Date.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court requests for payment of Administrative Expense Claims, other than requests for payment of professional fee claims must be filed and served on the Debtor no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in a separate order of the Court approving such bar date.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor or its property, and Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date. The Debtor must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Date.

2.9.    Tax Consequences of the Plan.

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and /or Advisors.***

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present. The proponent ***CANNOT*** and ***DOES NOT*** represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Generally speaking, a holder of a Claim which is subject to taxation in the United States (a "***Taxpayer-Claimant***") will realize income or loss for federal and state income tax purposes if its Claim is paid, unless such income or loss has previously been recognized, to the extent that such a payment would have created income or loss if paid by the Debtor outside the jurisdiction of the Bankruptcy Court.

A Taxpayer-Claimant which receives nothing or less than the full amount with respect to its Claim will realize a loss for federal and state income tax purposes to the extent that the Taxpayer-Claimant's tax basis in the Claim exceeds its recovery, except to the extent that a loss with respect to such Claim has previously been recognized.

There are complex issues which arise whenever debt is not paid in full, and only a limited summary of the rules can be given here. Taxpayer-Claimants should consult with their own tax advisors as to the impact of these rules on their particular situation.

2.10. <u>Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan</u>.

The three year projections are annexed hereto as **Exhibit D**. Payments for administrative expense claims, including professional fee claims, and priority claims will be paid on the Effective Date.

## ARTICLE III
## <u>FEASIBILITY OF PLAN</u>

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

3.1. <u>Ability to Initially Fund Plan</u>.

As noted above, the Non-Debtor Entities (which financials, combined with the Debtor are being used to fund the Plan), suffered great losses during the COVID-19 pandemic. Although the pickup has not been as robust as the Debtor would have liked, the Debtor believes that it will be able to meet the guideposts set forth in the projections annexed to the Plan.

3.2. <u>Ability to Make Future Plan Payments and Operate Without Further Reorganization / Liquidation</u>.

As noted above, the Non-Debtor Entities (which financials, combined with the Debtor are being used to fund the Plan), suffered great losses during the COVID-19 pandemic. Although the pickup has not been as robust as the Debtor would have liked, the Debtor believes that it will be able to meet the guideposts set forth in the projections annexed to the Plan.

## ARTICLE IV
## <u>LIQUIDATION ANALYSIS</u>

Pursuant to Bankruptcy Code section 1129(a)(7), in order for this Plan to be confirmed, each creditor must either have voted to accept this Plan (or be deemed to have accepted this Plan), or this Plan must provide for each creditor to receive at least as much as it would as of the Effective Date if the Debtor were liquidated under Chapter 7 on such date.

A detailed liquidation analysis – as of the Petition Date – is set forth in <u>Exhibit C</u> to this Plan. Section 1129(a)(7) is satisfied because this Plan provides for holders of allowed general unsecured claims – the only class of claims that is impaired and therefore eligible to vote on this Plan – to receive a *pro rata* share of the Class 3 Distribution Amount which is an amount materially greater than the amount such creditors would be expected to receive in a hypothetical chapter 7 liquidation.

## ARTICLE V
## GENERAL PROVISIONS

    5.1.    <u>Title to Assets</u>.

    If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

    If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

    5.2.    <u>Binding Effect</u>.

    If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

    5.3.    <u>Retention of Jurisdiction</u>.

    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction of all matters arising out of, and related to, the Subchapter V Case and the Plan, including jurisdiction to:

    (i)    resolve any matters related to Executory Contracts and Unexpired Leases, including (a) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

    (ii)    adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Subchapter V Case, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all

controversies and issues arising from or relating to any of the foregoing;

(iii)    ensure that distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(iv)    hear and determine or resolve any and all matters related to Causes of Action;

(v)    enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

(vi)    issue and implement orders in aid of execution, implementation, or consummation of this Plan;

(vii)    consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(viii)    hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all matters related to sections 1192 and/or 1141 of the Bankruptcy Code;

(ix)    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

(x)    hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of its Estate, wherever located;

(xi)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xii)    grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, or in the event that the Effective Date does not occur, to consider any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4);

(xiii)  hear any other matter not inconsistent with the Bankruptcy Code;

(xiv)  hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

(xv)  issue a final decree and enter an order closing the chapter 11 case; and

(xvi)  enforce all orders previously entered by the Bankruptcy Court.

After the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date. Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

5.4.    <u>Effecting Documents; Further Transactions; Timing</u>. The Debtor and Reorganized Debtor are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the term of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

5.5.    <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

5.6.    <u>Modification and Amendments</u>. The Debtor may alter, amend, or modify this Plan under section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may under section 1193(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

5.7.    <u>Revocation, Withdrawal, or Non-Consummation</u>. The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtor's filing of a notice thereof, and to file subsequent Subchapter V plans. If the Debtor revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Causes of Action or Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

5.8.    <u>Entire Agreement</u>. Except as otherwise indicated, the Plan supersedes all previous

and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

5.9. <u>Severability</u>. If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtor's consent, and (c) nonseverable and mutually dependent.

5.10. <u>Exhibits</u>. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.

5.11. <u>Conflicts</u>. Except as set forth in the Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

5.12. <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

5.13. <u>Final Decree</u>. Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

5.14. <u>Conditions to Effectiveness</u>.

A.    The Effective Date does not occur unless and until:

    (i)    The Confirmation Date occurs and the Confirmation Order has become a Final Order;

    (ii)    No request for revocation of the Confirmation Order under Bankruptcy Code section 1144 is pending;

(iii) All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective.

B. <u>Waiver of Conditions</u>. The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

C. <u>Effect of Non-Occurrence of the Effective Date</u>. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; or (b) constitute an admission, acknowledgement, offer or undertaking by the Debtor.

5.15. <u>Distributions</u>.

A. <u>Reorganized Debtor to Make Distributions</u>. Unless ordered otherwise in the Confirmation Order, the Reorganized Debtor shall make all payments required by this Plan. Upon the Effective Date, all payments or funds received by the Subchapter V Trustee, if any, during this Subchapter V Case shall be returned to the Reorganized Debtor.

B. <u>Method of Payment; Payments, Filings, and Notices Only on Business Days</u>. Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

C. <u>Undeliverable or Unclaimed Distributions</u>. Payments required by this Plan, if made by check, shall be mailed to the address set forth in any proof of claim, to the address set forth in any written notice of address change filed with the Court or provided to the Debtor or its counsel, or to the address set forth in the Debtor's schedules if no proof of claim has been filed and no written notice of address change has been filed or provided. If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revert to the Reorganized Debtor at the expiration of six (6) months from the later of (a) the Effective Date, and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act

as a bar to entry of a final decree Closing the Subchapter V Case.

        D.     <u>Time Bar to Cash Payments</u>. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Reorganized Debtor.

        E.     <u>Setoff and Recoupment</u>. From and after the Effective Date, the Reorganized Debtor may, to the extent permitted by section 558 of the Bankruptcy Code or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Causes of Action of any nature whatsoever that the Reorganized Debtor may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor of any other Cause of Action.

        F.     <u>No Interest</u>. Unless otherwise specifically provided for in this Plan, post-petition interest shall not accrue or be paid on any Claim.

        G.     <u>Disputed Claims</u>. No payment will be made on account of a Disputed Claim unless such claim has been Allowed by final non-appealable order. The Reorganized Debtor shall have until the Claim Objection Deadline to file objections to any Disputed Claim. The Claim Objection Deadline may be extended on motion of the Reorganized Debtor for cause, or on consent. For the avoidance of doubt, the Reorganized Debtor shall have the authority to settle and resolve any Disputed Claim on such terms as it deems appropriate without the need for Court approval. The Debtor shall establish a reserve for the payment of any Disputed Claim, to the extent such claim becomes Allowed. The amount set aside in the reserve for any Disputed Claim shall be the amount that would be paid on account of such Claim if allowed in the lower of: (a) the amount set forth in the applicable proof of claim and (b) the estimated amount of such Claim for payment purposes, as determined by the Court.

        H.     <u>Withholding Taxes</u>. The Reorganized Debtor shall be entitled to deduct any federal, state or local withholding taxes from any payments made under this Plan. As a condition to making any such payment, the Reorganized Debtor may require that the holder of an Allowed Claim provide its Taxpayer Identification Number and such other information and certification as may be deemed necessary for it to comply with applicable tax reporting and withholding laws. If any Holder of an Allowed Claim fails to provide such number, information or certification within sixty (60) days from the date of first notification to the Holder of the need for such information, such Holder's distribution will be treated as unclaimed property in accordance with Section 5.15.C herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

## ARTICLE VI
## EFFECT OF THE PLAN ON CLAIMS, INTERESTS AND CAUSES OF ACTION

6.1.    Binding Effect. On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Subchapter V Case and its respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has been deemed to accept the Plan.

6.2.    Vesting of Assets. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Causes of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of all Claims, liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

6.3.    Discharge. In the event this Plan is confirmed under Bankruptcy Code section 1191(a), as of the Effective Date the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Bankruptcy Code section 1141(d)(1)(A), except that the Debtor will not be discharged of any debt imposed by this Plan.  In the event this Plan is confirmed under section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan unless the Court grants a discharge on completion of all payments due under this Plan, or as otherwise provided in Bankruptcy Code section 1192.

6.4.    Releases by the Debtor. Except as otherwise provided herein, as of the Effective Date, for good and valuable consideration, each of (i) the Debtor's current and former officers, directors, principals, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives of the Debtor, in each case solely in their capacity as such and (ii) the Parent, its affiliates, and the current and former officers, directors, principals, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives of the Parent, in each case solely in their capacity as such, are deemed released and discharged by the Debtor and its Estate from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise that the Debtor or its Estate would have been legally entitled to assert in their own right or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Subchapter V Case, the Plan, the negotiation, formulation or preparation of the Plan, or related agreements, instruments, or other documents in connection with the

transactions contemplated under the Plan, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided that nothing in the Plan, including this paragraph shall release (i) any obligations under the Plan or the Plan; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order.

6.5. **Releases by Holders of Claims. To the greatest extent permissible under law, as of the Effective Date, except as otherwise provided in the Plan, all Persons who have held, hold, or may hold Claims, Interests, causes of action, or liabilities that are subject to compromise and settlement pursuant to the terms of the Plan or are otherwise discharged, satisfied, stayed or terminated pursuant to the Plan are deemed to have released the Debtor, Reorganized Debtor, the Estate and each of their affiliates, current and former officers, directors, principals, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives (collectively, the "*Released Parties*"), from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any direct claims held by any such Person against each Released Party or derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor or its affiliates, the Debtor's restructuring, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any such Person, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Confirmation Order, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor taking place on or before the Effective Date; provided that, notwithstanding anything to the contrary in the foregoing, nothing in the Plan, including this paragraph shall release (i) any obligations under the Plan; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order.**

6.6. **Injunction.**

A. **Generally. Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim that is unclassified by the Plan or that is classified by Article III of the Plan or that is subject to a distribution under the Plan, or an Interest or other right of an equity holder, are permanently enjoined from taking any of the following actions on account of any such Claims or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against any property to be distributed under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment,**

award, decree, or order against any property to be distributed under the Plan; (iii) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under the Plan; and (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

B.  Limited Scope. Nothing in this Plan: (i) extinguishes, prohibits, or otherwise limits the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under the Plan; (ii) extinguishes, prohibits, or otherwise limits the right of the Estate or Reorganized Debtor to assert and prevail on any Cause of Action; (iii) enjoins or otherwise precludes any party-in-interest from enforcing the terms of the Plan and the Confirmation Order.

C,  **Exculpation. The Exculpated Parties shall not have any liability to any holder of a Claim or Interest for any claims or Litigation Claims arising before, on or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Subchapter V Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.**

D.  Retention, Reservation and Prosecution of Causes of Action. Except as otherwise provided in the Plan, all Causes of Action are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Causes of Action. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Causes of Action, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Reorganized Debtor shall have sole discretion to determine in its business judgment which Causes of Action to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, right, or Cause of Action, the Reorganized Debtor shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan

1.  Debtor's Schedules A/B, annexed as **Exhibit "A."**
2.  Debtor's Schedules D, E, and F, annexed as **Exhibit "B."**
3.  The Liquidation Analysis is annexed hereto as **Exhibit "C."**
4.  3-Year Financial Projections annexed hereto as **Exhibit "D."**

# ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Subchapter V?** Subchapter V of chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Subchapter V, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine which Class I am in.** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** The Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is seven (7) days before the Confirmation hearing date. Ballots should be mailed to the following address:

> **A.Y. Strauss LLC**
> **Attn: Eric H. Horn, Esq.**
> **Heike M. Vogel, Esq.**
> **101 Eisenhower Parkway, STE 412**
> **Roseland, New Jersey 07068**

**How Do I Determine When and How Much I Will Be Paid?** The Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9
## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

A. <u>Definitions</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

9.1 <u>Administrative Claimant</u>. Any person entitled to payment of an Administration Expense.

9.2 <u>Administrative Convenience Class</u>. A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

9.3 <u>Administrative Expense</u>. Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

9.4 <u>Administrative Expense Claims Bar Date</u>. The first Business Day that is 30 days

following the Effective Date, except as otherwise specifically set forth in the Plan.

9.5     <u>Administrative Expense Claims Objection Date</u>. The first Business Day that is 90 days following the Effective Date, except as otherwise specifically set forth in the Plan; provided that the Administrative Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Reorganized Debtor after notice and a hearing.

9.6     <u>Administrative Tax Claim</u>.  Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

9.7     <u>Allowed Claim</u>. Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

9.8     <u>Allowed Priority Tax Claim</u>. A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

9.9     <u>Allowed Secured Claim</u>. Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

9.10    <u>Allowed Unsecured Claim</u>. An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

9.11    <u>Bankruptcy Code</u>. The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code, as amended from time to time.

9.12    <u>Bankruptcy Court</u>. The United States Bankruptcy Court for the Southern District of New York, which has jurisdiction over the Chapter 11 Case.,

9.13    <u>Bankruptcy Rules</u>.  The Federal Rules of Bankruptcy Procedure. means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

9.14    <u>Cash</u>. Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct

obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

9.15    Causes of Action.  Any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, and actions against any Person or entity for failure to pay for products or services provided or rendered by the Debtor, all claims, suits or proceedings relating to enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's or the Reorganized Debtor's businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

9.16    Chapter 11 Case or Subchapter V Case.  This case under chapter 11 of the Bankruptcy Code in which Debtor is the Debtor-in-Possession.

9.17    Claim. Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

9.18    Class. A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

9.19    Class 3 Distribution Amount.  Aa amount equal to the disposable income available, for the three years post-Effective Date, to be distributed to holders of Allowed Class 3 Claims.

9.20    Confirmation.  The entry by the Bankruptcy Court of an order confirming this Plan.

9.21    Confirmation Date. The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

9.22     Confirmation Hearing. The hearing to be held on [●] [●], 2022 to consider confirmation of the Plan.

9.23     Confirmation Order. An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

9.24     Creditor. Any person who has a Claim against the Debtor that arose on or before the Petition Date.

9.25     Debtor and Debtor-in-Possession. Corinthian Communications Inc., the debtor-in-possession in this Chapter 11 Case.

9.26     Disputed.  As to any Claim (or portion thereof) or Interest against the Debtor, a Claim or Interest to the extent the allowance of such Claim or Interest is the subject of (i) a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, and which objection, request for estimation or dispute has not been withdrawn, with prejudice, or determined by an order of the Bankruptcy Court, or (ii) a dispute that is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law.

9.27     Distributions. The property required by the Plan to be distributed to the holders of Allowed Claims.

9.28     Effective Date. Thirty (30) days after entry of the order confirming the Plan unless the Plan or Confirmation Order provide otherwise.

9.29     Equity Interest. An ownership interest in the Debtor.

9.30     Estate.  The bankruptcy estate of the Debtor created pursuant to § 541 of the Bankruptcy Code.

9.31     Executory Contracts. All executory contracts as described in Section 365 of the Bankruptcy Code.

9.32     Final Order. An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

9.33     Impaired. Impaired has the meaning set forth in § 1124 of the Bankruptcy Code.

9.34     IRC. The Internal Revenue Code.

9.35    Net Disposable Income. The definition of "disposable income" as such term is defined and used in § 1191 of the Bankruptcy Code.

9.36    Person. An individual, corporation, partnership, limited liability company (including its members), joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

9.37    Petition Date. April 4, 2022, the date the chapter 11 petition was filed.

9.38    Plan. This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

9.39    Plan Scheduling Order.  The order entered by the Bankruptcy Court on [•] [•], 2022 with respect to the Plan, solicitations of acceptances with respect thereto, and confirmation thereof.

9.40    Priority Tax Claim. Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

9.41    Professional. A Person: (a) employed in the Chapter 11 Case pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328, 363, or 1103 and compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b). For the avoidance of doubt the Sub-V Trustee is also considered a Professional hereunder.

9.42    Professional Fee Claim. An Administrative Claim for compensation and reimbursement of expenses of a Professional incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

9.43    Pro Rata.  A proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of that Allowed Claim is the same as the ratio of all consideration distributed on account of all Allowed Claims in that Class to the amount of all Allowed Claims in that Class.

9.44    Reorganized Debtor. The Debtor upon and after the Effective Date of this Plan.

9.45    Schedules.  Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

9.46    Secured Creditor.  Any creditor that holds a Claim that is secured by property of the Debtor.

9.47    <u>SOFA</u>.  The Statement of Financial Affairs filed by the Debtor.

9.48    <u>Subchapter V Trustee</u>.  Eric Huebscher, the Subchapter V trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

9.49    <u>Unexpired Lease</u>. A lease of nonresidential real property to which Debtor is a party that is subject to assumption or rejection under §365 of the Bankruptcy Code.

9.50    <u>Unimpaired</u>.  With respect to a Class of Claims or Interests, such Class is not Impaired.

9.51    <u>Unsecured Creditor</u>. Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

9.52    <u>U.S. Trustee or UST</u>.  The Office of the United States Trustee for the Southern District of New York.

B.    <u>Rules of Construction</u>.

1.    <u>Generally</u>.  For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

2.    <u>Time Periods</u>.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

3.    <u>Miscellaneous Rules</u>. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

Respectfully submitted,


**A.Y. STRAUSS LLC**


By:___/s/ Eric H. Horn_____
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
101 Eisenhower Parkway, STE 412
Roseland, New Jersey 07068
Tel. (973) 287-5006
Fax (973) 226-4105

*Counsel to the Debtor and*
*Debtor-in-Possession*

**EXHIBIT A**

Debtor name     **Corinthian Communications Inc.**

United States Bankruptcy Court for the:     SOUTHERN DISTRICT OF NEW YORK

Case number (if known)

☐ Check if this is an
amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property     12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest.
Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties
which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts
or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write
the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an
additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset
schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the
debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.

■ Yes Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor

Current value of
debtor's interest

3.     **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*
Name of institution (bank or brokerage firm)          Type of account          Last 4 digits of account
number

| | 3.1. | **Merrill** | **Checking** | **2401** | **$12,280.00** |
|---|---|---|---|---|---|

4.     **Other cash equivalents** *(Identify all)*

5.     **Total of Part 1.**

$12,280.00

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and Prepayments |
|---|---|

6. Does the debtor have any deposits or prepayments?

■ No. Go to Part 3.

☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

10. Does the debtor have any accounts receivable?

■ No. Go to Part 4.

☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

13. Does the debtor own any investments?

■ No. Go to Part 5.

☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. | Office furniture<br>Older computers, desks, chairs and conference table | $0.00 | Liquidation | $10,000.00 |
| 40. | Office fixtures | | | |
| 41. | Office equipment, including all computer equipment and communication systems equipment and software | | | |
| 42. | Collectibles *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |

**43. Total of Part 7.**
Add lines 39 through 42.  Copy the total to line 86.          $10,000.00

**44. Is a depreciation schedule available for any of the property listed in Part 7?**
■ No
☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 8: | Machinery, equipment, and vehicles |

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

| Part 9: | Real property |

**54. Does the debtor own or lease any real property?**

■ No.  Go to Part 10.

☐ Yes Fill in the information below.

| Part 10: | Intangibles and intellectual property |

**59. Does the debtor have any interests in intangibles or intellectual property?**

☒ No. Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | All other assets |

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.
☒ Yes Fill in the information below.

| | | Current value of debtor's interest |

| 71. | **Notes receivable**<br>Description (include name of obligor) | |
| 72. | **Tax refunds and unused net operating losses (NOLs)**<br>Description (for example, federal, state, local) | |
| | **Employee Retention Credits Owing**     Tax year **2021** | **$334,181.77** |
| 73. | **Interests in insurance policies or annuities** | |
| 74. | **Causes of action against third parties (whether or not a lawsuit has been filed)** | |
| 75. | **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** | |
| 76. | **Trusts, equitable or future interests in property** | |
| 77. | **Other property of any kind not already listed** *Examples:* Season tickets, country club membership | |
| 78. | **Total of Part 11.**<br>Add lines 71 through 77. Copy the total to line 90. | **$334,181.77** |

**79. Has any of the property listed in Part 11 been appraised by a professional within the last year?**
☒ No
☐ Yes

| Part 12: | Summary |
|---|---|

In Part 12 copy all of the totals from the earlier parts of the form

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $12,280.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $10,000.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9*..............................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $334,181.77 | |
| 91. **Total.** Add lines 80 through 90 for each column | $356,461.77 | + 91b.   $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $356,461.77 |

**EXHIBIT B**

Fill in this information to identify the case:

Debtor name **Corinthian Communications Inc.**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known) _____

☐ Check if this is an
amended filing

# Official Form 206E/F
# Schedule E/F: Creditors Who Have Unsecured Claims                12/15

**Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.**

## Part 1: List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
   with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | | **Total claim** | **Priority amount** |
|---|---|---|---|---|
| 2.1 | Priority creditor's name and mailing address<br>**Ann Mastracchio**<br>**105-10 101 Road**<br>**Ozone Park, NY 11416** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$36,897.05** | **$15,150.00** |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |
| 2.2 | Priority creditor's name and mailing address<br>**Ellen Carry**<br>**334 W 87th St. 3A**<br>**New York, NY 10024** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$19,410.34** | **$15,150.00** |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,905.34 | $7,905.34 |

**Larry Schneiderman**
**4 Walnut Road**
**East Rockaway, NY 11518**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)    ■ No
☐ Yes

---

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $95,395.45 | $15,150.00 |

**Robert Klein**
**13035 Jerome Jay Drive**
**Hunt Valley, MD 21030**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)    ■ No
☐ Yes

---

| 2.5 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $153.45 | $153.45 |

**Tina Snitzer**
**180 West End Ave #6**
**New York, NY 10023**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)    ■ No
☐ Yes

---

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims**. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $1,030,342.00 |

**500 8th Ave LLC**
**PO Box 76119**
**Baltimore, MD 21275**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset?   ■ No   ☐ Yes

---

**Part 3:**    **List Others to Be Notified About Unsecured Claims**

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

Debtor  **Corinthian Communications Inc.**
         _____
         Name

Case number (*if known*)  _____

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |

5.  **Add the amounts of priority and nonpriority unsecured claims.**

| | | Total of claim amounts |
|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ 159,761.63 |
| **5b. Total claims from Part 2** | 5b. + | $ 1,030,342.00 |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ 1,190,103.63 |

# EXHIBIT C

# Liquidation Analysis (as of Petition Date)

| Assets | Book Value | Rec. % | Rec. $ |
|---|---|---|---|
| Cash & Cash Equivalents | 12,800 | 100% | 12,800 |
| Earned Employee Income Credit | 334,182 | 100% | 334,182 |
| FF&E | 10,000 | 4% | 400 |
| **Gross Proceeds from Liquidation** | **356,982** | **97%** | **347,382** |
| Administrative Claims | | | |
| Trustee Fees | | 3% | 10,710 |
| Trustee Professionals | | | 50,000 |
| Wind-down Costs | | | 10,000 |
| Chapter 11 Administrative Expenses | | | 100,000 |
| Total Liquidation Expenses | | | 170,710 |
| **Net Proceeds Available for Priority Claims** | | | **176,672** |
| Priority Unsecured Claims | - | | 159,762 |
| **Net Proceeds Available for Unsecured Claims** | | | **16,910** |
| ***Class 3 Distribution Amount*** | **$ 16,910** | | |
| General Unsecured Claims | 1,136,595 | 1.15% | (1,119,685) |
| **Net Proceeds Available for Equity Claims** | | | **-** |

**Available to 3rd Party General Unsecured Claims**  16,910
**Available to 3rd Party GUC's - Pursuant to the Plan**  **[PLAN SUPPLEMENT TO BE FILED SHORTLY]**

**EXHIBIT D**
**[PLAN SUPPLEMENT TO**
**BE FILED SHORTLY]**