

July 18, 2022

**VIA ECF**

The Honorable Chief Judge Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-4551

Re: Corinthian Communications, Inc.; Case No. 22-10425; Subchapter V Trustee – Status Report

Dear Judge Glenn:

This Status Report ("Report") provides an update regarding the Subchapter V Trustee's ("Trustee") efforts since the hearing on July 7, 2022. The Trustee continues to work with the Debtor and Debtor's counsel in an effort to reach a consensual plan of reorganization. The Trustee has also been in contact with counsel to the landlord and with the Office of the United States Trustee ("OUST"). This Report summarizes these efforts.

The Debtor is owned (100%) by Larry Miller ("Miller"), who is also the owner (100%) of three other closely held affiliates[1] i.e., Media, Trading and Broadcast; hereinafter referred to as the "Affiliates". The Debtor's operational and financial activities should not be viewed or evaluated in the absence of understanding and analyzing the business activities of the Affiliates. The Debtor is the administrative arm of the Affiliates and provides payroll and administrative payment services on behalf of the Affiliates. The Debtor receives 100% of its revenue from the Affiliates. There are no written agreements between the Debtor and Affiliates that establish any guidelines as to how or under what circumstances funds flow from the Affiliates to the Debtor. The Subchapter V Trustee is unable to determine whether the correct amounts were transferred from the Affiliates to the Debtor.

An example of the intertwined relationship between the Debtor and Affiliates, the Trustee reviewed the changing Debtor cash balances over the past several months. The Trustee noted that the Schedules reported a total cash balance of $12,280.00. The April MOR shows that this balance grew to $72,646.68. The May MOR has a cash balance of $91,195.72. The June MOR has a cash balance of $300,858.21. The Plan Supplement (ECF No.54) shows that $338,120.00 will be available under the plan for the General Unsecured Creditors ("GUC"). It is interesting to note the close proximity of the current cash balance to the amount identified for the GUC. The Debtor has not provided any explanation for this 2,400% increase in cash reserves over a three-month

---

[1] Miller testified that he is the owner of 30 to 40 other business entities. The Trustee and OUST requested detailed information on these other affiliates. The Trustee has still not received the requested detailed information.



period. This points to a clear unambiguous nexus between the business affairs of the Affiliates and the Debtor and the Affiliates ability to regulate the funding to the Debtor.

Since the July 7, 2022 hearing, counsel to the Debtor and counsel to Miller requested an in-person meeting to explain the Debtor's business affairs. The Trustee informed counsel to the Debtor that an in-person meeting might not be needed, assuming that the Debtor complied with various outstanding document and information requests. The Trustee also informed counsel to the Debtor that it would be more appropriate to channel all communications through his office, rather than counsel to Mr. Miller. Given the Debtor's continued lack of disclosure this meeting has not taken palce.

In order to properly evaluate a plan of reorganization, it is imperative to review and understand the financial affairs of both the Debtor and Affiliates. As an example of the work associated with this effort, the Trustee and the OUST requested from the Debtor detailed information on several historical categories of Debtor expenses[2]. The Debtor first provided this information on July 14, 2022 via two Dropbox links. These links contained over 3,000 pages of what appeared to be invoices paid by the Debtor. No information was provided as to how these documents reconciled to the financial statements of the Debtor. The Trustee's review of these documents raised several questions, including whether these expenses were solely expenses of the Debtor or contained personal expenses of Miller[3]. The Debtor did not provide any further explanations to the Trustee's questions.

The Trustee also requested banking documents for the Affiliates. Counsel to the Debtor insisted on the Trustee signing an NDA in order for the Debtor to turn over these documents. The Trustee, who is not currently represented by counsel, determined that this request was not necessary and may have placed unreasonable limitations on the use of this information. The analysis of the Affiliates' banking information (and possibly of other entities owned and/or controlled by Miller) is of critical importance. Lastly, the Trustee requested information regarding unresolved questions surrounding the Debtor's PPP loans. Counsel to the Debtor did not supply any further information to the Trustee regarding the PPP loans.

There has not been an open and timely exchange of information in this case. This lack of transparency has led to an unnecessary increase in the Court's time and administrative expenses. There have been extraordinary delays and obstacles created by the Debtor to limit or prevent access to this information. The Subchapter V process works best when the Debtor (and other constituency groups) and the Trustee work with aligned goals and objectives.

---

[2] The initial request was made during the initial 341 Hearing on May 5, 2022. The request was made again during the continued 341 Hearing on June 9, 2022 and again in an email to Debtors counsel on July 8, 2022.

[3] The Trustee had other questions regarding these documents. Those included further explanation of accounting charges and a detailed inventory of IT equipment that appeared to have been purchased during 2020 and 2021. The Trustee noted that these expenditures appeared to be inconsistent with the scheduled inventory, which stated a $10,000 liquidation value.



There is a pending motion by the OUST to remove this Debtor and place the Subchapter V Trustee as the operating Trustee. This motion was continued to July 21, 2022. Given the intertwined dependency of the Debtor to the Affiliates and the lack of any financial contractual obligation of the Affiliates to the Debtor, the Subchapter V Trustee is pessimistic at any chance of reorganization under these circumstances. The Trustee's review of information and documents provided by the Debtor point to potential causes of action against Affiliates as well as Miller. The pursuit of these causes may be more appropriate under a Chapter 7 conversion.

Sincerely

Eric Huebscher
Subchapter V Trustee

office: 646.584.3141   fax: 212.202.3503
630 Third Avenue : 21st Floor : New York, NY 10017   www.HuebscherConsulting.com