WILLIAM K. HARRINGTON  
UNITED STATES TRUSTEE  
201 Varick Street, Room 1006  
New York, New York 10014  
(212) 510-0500  
By: Susan A. Arbeit  
    Richard Morrissey  
    Trial Attorneys

**Hearing Date**: July 21, 2022 at 3:00 p.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-------------------------------------------------------X  
In re : Chapter 11  
CORINTHIAN COMMUNICATIONS INC., :  
    Case No. 22-10425 (MG)  
    Debtor.  
-------------------------------------------------------X

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO REMOVE THE DEBTOR AS DEBTOR IN POSSESION PURSUANT TO 11 U.S.C. § 1185(a)**

TO:    THE HONORABLE MARTIN GLENN  
       UNITED STATES BANKRUPTCY JUDGE

William K Harrington, the United States Trustee for Region 2 (the "**United States Trustee**") by and through his undersigned counsel submits this supplemental memorandum of law (the "**Supplement**") in further support of *United States Trustee's Motion To Remove The Debtor As Debtor In Possession Pursuant to 11 U.S.C. §1185(a)* [ECF No. 37] (the "**Motion**"). In support of the Supplement, the United States Trustee respectfully sets forth and represents as follows:

    1.    On July 7, 2022, during the hearing (the "**Hearing**") on the Motion the Court invited the United States Trustee, along with other parties in interest, to file a supplemental brief discussing the bankruptcy court's decision: *In re No Rust Rebar,* 2022 WL 1639322 (S.D. Fla Bankr. May 23, 2022*)* ("***No Rust Rebar***").

2. The *No Rust Rebar* case has many similarities to the instant case. Like Mr. Miller, Don Smith, the president of *No Rust Rebar*, controlled both the debtor and various other affiliated companies (collectively the "**Family**"). 2022 WL 1639322, at \*\*1-3. Like the Corinthian Enterprise[1], the Family in *No Rust Rebar* operated from the same property and while they represented themselves as separate and distinct entities, they shared expenses and failed to follow corporate formalities. *See* 2022 WL 1639322, at \*8-9.

3. Lack of transparency was a major issue in *No Rust Rebar* and has been and continues to be an issue in the instant case.

4. The Court in *No Rust Rebar* found it very concerning that the debtor's assets and non-debtor affiliate's assets were commingled such that there <u>might</u> be a substantial loss to the estate. *Id.* at \*10 (underlined for emphasis). The Court further acknowledged that Mr. Smith would have to investigate the various transfers made between the Family and determine whether the debtor had claims to any of these funds. *Id*. The Court ultimately found cause to remove the debtor as debtor in possession, *inter alia,* stating that there was "an incurable conflict of interest" and that *No Rust Rebar* could not investigate its president and the entities that it controls.[2] *Id*.

5. The conflict of interest in the instant case is such that when combined with Corinthian Communication Inc. (the "**Debtor**")'s lack of transparency in its public filings and its failure to provide information and documents reasonably requested by the United States Trustee and

---

[1] As used in the Motion, the Corinthian Enterprise consists of the Debtor Corinthian Communications, Inc., Corinthian Trading Inc., Corinthian Media Inc., and Broadcast Buying Services.

[2] The Court in *No Rust Rebar* found sufficient cause to remove the debtor as the debtor in possession or to convert the case to a Chapter 7. The Court chose to convert because there did not appear to be a debtor to reorganize (the debtor "at best, held an interest in a single piece of real estate, lacked any real production facility, and failed to provide a 'viable solution' to becoming an operational business") and thus, it was in the best interest of creditors and the estate to have a chapter 7 trustee liquidate the assets and investigate and pursue any claims on behalf of the estate. 2022 WL 1639322, at \*13.

the Subchapter V Trustee, it is impossible for the Court and parties in interest to have full trust and confidence in the Debtor's management that will likely hinder reorganization.

6. To date, the Debtor has not supplied the following information to counsel to the United States Trustee:

   a. A breakdown of the large expenses listed on the Debtor's 2019 and 2020 1120-S Tax Returns (consulting services, legal and professional fees, rating services, and insurance). The breakdown should explain the expenses (what entity they benefited, provide sufficient detail on the expense when there is an invoice with little to no detail).[3]

   b. Bank statements for the Debtor for 2016 through 2019.

   c. Information showing all transactions among and between Corinthian Trading Inc., ("**Trading**") Corinthian Media Inc. ("**Media**"), Broadcast Buying Services ("**Broadcast Buying**"), and the Debtor for the last six years.

   d. Information on whether the Debtor would have qualified for the second draw through the PPP loan process if it incorporated into its gross receipts reduction calculation the numbers of (a) the Debtor and (b) the affiliated entities owned or controlled by Mr. Miller.[4]

   e. Information on whether there would be a reduction in premiums if Broadcast Buying was removed as an insured from the Debtor's general liability insurance policy.

---

[3] On July 14, 2022, counsel to the Debtor sent the United States Trustee two large electronic files labeled 2020 and 2021 Expenses, which appear to be invoices paid by the Debtor. The Debtor did not provide (1) any invoices or explanation regarding the large expenses set forth in Statement 2 of its 2019 1120-S Tax Return, (2) any explanation on how these invoices reconciled with the information contained in Statement 2 of the Debtor's 2020 1120-S Tax Return, (3) any explanation on which of the entities within the Corinthian Enterprise these expenses benefitted, or (4) any detail on certain of the accounting or other professional invoices that did not include detail on the tasks performed. The United States Trustee's review of these invoices raised further questions, as some expenses appeared to benefit Mr. Miller personally. For example, one 2020 invoice is addressed to Mr. Miller, c/o Corinthian Communications, Inc., Client Matter Larry Miller/40 East 20 with a description of the work performed as followed: "Review Sale of Membership Interest Agreement, Assignment, Note, and Pledge Agreement; review 2016 transaction; review 40 East 20 Operating Agreement; telephone call with Larry and Alping regarding same; revise Sale of Membership Agreement and Assignment".

[4] On July 16, 2022, the Debtor provided a list of entities that Mr. Miller "might arguably control." The list was marked "For UST EYES Only".

Dated: New York, New York
       July 18, 2022

                              WILLIAM K. HARRINGTON
                              UNITED STATE TRUSTEE

            By:    */s/ Susan A. Arbeit*
                   Susan A. Arbeit
                   Richard Morrissey
                   Trial Attorneys