**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
In re:

CORINTHIAN COMMUNICATIONS, INC.,

                                            Debtor.
-----------------------------------------------------------------------x

**FOR PUBLICATION**

Chapter 11 (Subchapter V)

Case No. 22-10425 (MG)

**MEMORANDUM OPINION EXPANDING SUBCHAPTER V TRUSTEE'S DUTIES
PURSUANT TO 11 U.S.C. § 1183(b)(2) OF THE BANKRUPTCY CODE**

*A P P E A R A N C E S:*

A.Y. STRAUSS LLC
*Counsel for the Debtor*
101 Eisenhower Parkway
Roseland, NJ 07068
By: Heike M. Vogel, Esq.
     Eric H. Horn, Esq.
     Jordan M. Engelhardt, Esq.

HUEBSCHER & CO.
*Subchapter V Trustee*
301 East 87th Street, 20e
New York, NY 10128
By: Eric M. Huebscher

OFFICE OF THE UNITED STATES TRUSTEE, Region 2
*Representative for the U.S. Trustee*
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014
By: Susan A. Arbeit, Esq.

MORRISON COHEN LLP
*Counsel for 500 Eighth Avenue LLC*
909 Third Avenue
New York, NY 10022
By: David J. Kozlowski, Esq.
     Andrew Simpson, Esq.

Kudman Trachten Aloe Posner LLP
*Counsel for Larry Miller*
800 Third Avenue, 11th Floor
New York, NY 10022
By: Paul Aloe, Esq.
    David N. Saponara, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

The Small Business Reorganization Act ("SBRA" or "Subchapter V," codified as new 11 U.S.C. §§ 1181–1195) has been a remarkably successful addition to Chapter 11 of the Bankruptcy Code. It was designed to allow a small business debtor to file bankruptcy in a timely, cost-effective manner, that hopefully allows the debtor to restructure and remain in business, thereby benefiting the owners, employees, suppliers, customers, and others. Subchapter V provides for the appointment by the United States Trustee ("U.S. Trustee") of a non-operating trustee ("Subchapter V Trustee") who provides oversight of the debtor in possession and helps facilitate negotiation of what will hopefully be a consensual reorganization plan. *See* 11 U.S.C. § 1183. In this Court's experience, Subchapter V Trustees are the "honest brokers," who through their efforts have provided credibility in evaluating the debtor's business's prospects for a successful reorganization and facilitated negotiation of a plan of reorganization with the debtor's stakeholders, thereby enabling a small business to reorganize.

The success of a Subchapter V case depends in large part on the openness and transparency of the debtor with the Subchapter V Trustee, the U.S. Trustee, creditors, and with the Court. Where the debtor fails to meet its obligations of openness and transparency, the Bankruptcy Code provides the Court with remedies, ranging from dismissal of the case, conversion of the case to a case under Chapter 7, or removal of the debtor as the debtor in possession and substituting the Subchapter V Trustee as the operating trustee. But removing the

2

debtor as debtor in possession of a small business may make it considerably more difficult, if not impossible, for the debtor successfully to reorganize. It is often the debtor's owner who built the business—developing and maintaining relationships with employees, customers and vendors that give the debtor a chance at successfully reorganizing. Remove the owner's authority to manage the business as a debtor in possession, and the debtor is more likely to fail.

As explained below, the debtor's owner in this case has so far failed to meet the standards of openness and transparency imposed by the Bankruptcy Code and expected of him by this Court. While denied by the owner, his derelictions have been obvious to the Court, the U.S. Trustee, and the Subchapter V Trustee. The U.S. Trustee, supported by the Subchapter V Trustee, filed a motion to remove the debtor as debtor in possession. Unless this "ship gets righted" quickly, removal of the debtor as debtor in possession or conversion to Chapter 7 will be required.

Where questions remain about the conduct and affairs of a small business debtor, Subchapter V of the Bankruptcy Code provides the Court another alternative to removing the debtor as debtor in possession, namely expanding the powers of the Subchapter V Trustee to investigate the affairs of the debtor and to report to the Court. Has this debtor properly conducted its business? Were all payments and transfers among the debtor, its affiliates and principal proper and properly recorded? Is there a business that can and should be given one last chance to reorganize? In short, does the debtor deserve a chance to reorganize after a rocky start to this case?

At a hearing on July 21, 2022, the Court decided, instead of immediately removing the debtor as debtor in possession, to expand the Subchapter V Trustee's powers to investigate and report. The Court made clear that if the debtor's management fails to provide complete

3

cooperation and transparency then, at a minimum, the debtor will be removed as debtor in possession. The Order expanding the Subchapter V Trustee's powers was entered on July 22, 2022. ("Order," ECF Doc. # 68.)

## I. BACKGROUND

### A.    The Motion to Remove the Debtor as Debtor in Possession

The U.S. Trustee filed a motion ("Motion," ECF Doc. # 37) for the entry of an order removing the debtor, Corinthian Communications, Inc. (the "Debtor"), as the debtor in possession pursuant to 11 U.S.C. § 1185(a). The Subchapter V Trustee in this Subchapter V Chapter 11 case, Eric Huebscher, filed a declaration in support of the Motion. ("Huebscher Declaration," ECF Doc. # 37-1.)[1] The Debtor's landlord, 500 Eighth Avenue LLC (the "Landlord"), filed a joinder to the Motion. ("Joinder," ECF Doc. # 44.) The Debtor filed an opposition to the Motion ("Objection," ECF Doc. # 47) supported by the declaration of the Debtor's President and sole owner, Larry Miller ("Mr. Miller") ("Miller Decl.," ECF Doc. # 47-1), and the declaration of the Debtor's accountant, Michael Block (ECF Doc. # 47-2).

On July 18, 2022, the Subchapter V Trustee submitted a status report regarding his efforts to obtain more information about the Debtor. ("Status Report," ECF Doc. # 62.) On the same day, the U.S. Trustee filed a supplemental brief in further support of the Motion ("Supp. Brief," ECF Doc. # 63), and the Debtor filed a supplemental brief in further opposition to the Motion ("Supp. Objection," ECF Doc. # 60).

---

[1]    Attached to the Huebscher Declaration are Exhibits A–K (ECF Doc. ## 37-2–12), which contain transcripts of the section 341(a) meetings of creditors, copies of the Debtor's Paycheck Protection Program ("PPP") loan applications, forgiveness letters, revenue reduction spreadsheets, and the Debtor's tax returns. These exhibits are partially redacted to protect Mr. Miller's home address, social security number, and other private information. Physical unredacted copies the Exhibits A–K were provided to the Court.

The Court held hearings on the Motion on July 7, 2022 (the "July 7 Hearing") and on July 21, 2022 (the "July 21 Hearing"). At the conclusion of the July 21 Hearing, the Court stated it would enter an order expanding the Subchapter V Trustee's duties under section 1183(b)(2) of the Bankruptcy Code and indicated that it would issue a written opinion explaining the order. ("July 21 Hr'g Tr.," ECF Doc. # 69 at 23:1–3, 16–18.) The Order was entered the following day. As explained in this Opinion, the Court **FINDS** there is cause to expand the Subchapter V Trustee's duties under section 1183(b)(2) to include an investigation of "the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuation of such business . . . ." 11 U.S.C. § 1106(a)(3).

B.   **The Debtor's Business**

The Debtor is an S corporation that was founded in 1974 and is 100% owned by Mr. Miller, who is the Debtor's President and sole director. (*See* Motion ¶ 3; *see also Declaration of Larry Miller Pursuant to Local Bankruptcy Rule 1007-2* ("Miller Rule 1007-2 Decl."), ECF Doc. # 5 ¶¶ 1–2, 14.)[2] The Debtor provides bookkeeping and payroll for three of its non-debtor affiliates (the "Affiliates"): Corinthian Trading Inc. ("Trading"), Corinthian Media Inc. ("Media"), and Broadcast Buying Services ("Broadcast Buying").[3] (Motion ¶ 4 (citing Huebscher Decl. ¶ 2).) Each of the Affiliates is 100% owned by Mr. Miller. (*Id.*)

The Affiliates earn revenue from outside sources, and these funds flow to the Debtor. (*Id.* ¶ 5 (citing Huebscher Decl. ¶ 5).) However, there is no intercompany agreement in place

---

[2]   Mr. Miller states that the Debtor is a Delaware limited liability company. (Miller Rule 1007-2 Decl. ¶ 1.) The U.S. Trustee states that, according to the New York Department of State, the Debtor is a New York corporation. (Motion at 8 n.2 (citing Huebscher Decl. ¶ 1).)

[3]   The Debtor, Trading, Media, and Broadcast Buying are collectively referred to as the "Corinthian Enterprise."

5

setting forth shared liabilities or monthly flow of funds from the Affiliates to the Debtor. (*Id.* (citing Huebscher Decl. ¶ 6).)

### C. The Debtor's Bankruptcy Filing

On April 4, 2022 (the "Petition Date"), the Debtor filed a voluntary petition in this Court under Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). (*Id.* ¶ 1.) The Debtor elected to proceed under Subchapter V of Chapter 11 and the U.S. Trustee appointed the Subchapter V Trustee in the Debtor's bankruptcy case pursuant to section 1183(a) of the Bankruptcy Code. (*Id.* ¶¶ 2–3.)

On the Petition Date, the Debtor also filed its Schedules of Assets and Liabilities ("Schedules," ECF Doc. # 1 at 13–23) and Statement of Financial Affairs (ECF Doc. # 1 at 24–30). On Schedule E/F of the Debtor's Schedules, Mr. Miller was listed as having a nonpriority unsecured claim in the amount of $1,236,350.00 ("Miller Claim," ECF Doc. # 1 at 20). On June 7, 2022, the Debtor filed an amended Schedule E/F ("Amended Schedule E/F," ECF Doc. # 30) that removed the Miller Claim.

On May 5, 2022, Mr. Miller testified on behalf of the Debtor at the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "Initial 341 Meeting"). (Motion ¶ 6.) On June 9, 2022, Mr. Miller testified again on behalf of the Debtor at the adjourned meeting of creditors (the "Adjourned 341 Meeting," and collectively with the Initial 341 Meeting, the "341 Meetings").[4] (*Id.*)

At a hearing held on June 7, 2022, the Debtor's counsel informed the Court for the first time that the Debtor "provides payroll and accounting services" for other entities that have "common ownership with respect to the [D]ebtor's principal." ("June 7 Hr'g Tr.," ECF Doc. #

---

[4] The Motion incorrectly states that the Adjourned Meeting occurred on July 9, 2022. (Motion ¶ 6.)

6

49 at 4:16–19.) The Debtor's counsel also informed the Court that a trust owned by Mr. Miller's children owns 20 percent of the building in which the Debtor leased its office space. (*Id.* at 7:19–25.) The U.S. Trustee informed the Court that it was asking for documentation on the Miller Claim that was reflected in the Schedules. (*Id.* at 9:1–4.)

The Court stated that the Miller Rule 1007-2 Declaration provided no indication that the Debtor was affiliated with the Affiliates and ordered that a supplemental Local Rule 1007-2 declaration be filed. (*Id.* at 11:8–12:3.) The Court also ordered that information on the Miller Claim be added in the supplemental Rule 1007-2 declaration. (*Id.* at 24:6–23.) On June 14, 2022, the Debtor filed the supplemental declaration of Mr. Miller. ("Supp. Miller Rule 1007-2 Decl.," ECF Doc. # 34.)

      **D.**    **Is There Cause to Remove the Debtor as Debtor in Possession?**

          1.    *The Motion*

In the Motion, the U.S. Trustee argues that there is cause to remove the Debtor as debtor in possession under section 1185(a) of the Bankruptcy Code for fraud, gross mismanagement, and a lack of transparency. (Motion at 6.)

The U.S. Trustee argues that the Debtor committed fraud by receiving almost one million dollars based on two PPP loan applications that incorrectly stated the Debtor does not have any common management with other businesses when in fact the Debtor should have disclosed the entities in the Corinthian Enterprise and the 40 other companies owned by Mr. Miller. (*Id.* at 18–19 ("It is highly unlikely that [the Debtor] . . . mistakenly failed to disclose the fact that [it] was part of a larger group of entities.").)[5]

---

[5] The U.S. Trustee also argues that to obtain eligibility for the second PPL loan the Debtor "fraudulently reported the quarterly gross receipts of" the Affiliates instead of the Debtor's quarterly gross receipts. (Motion at 19.) However, in a letter to the Court dated June 28, 2022, the U.S. Trustee explains that it has learned this argument is "incorrect" and that for PPP loan applications, "[g]ross receipts of a borrower with affiliates is

7

The U.S. Trustee asserts that the Debtor engaged in gross mismanagement because the Debtor and its affiliates follow very few, if any, corporate formalities and there is no intercompany agreement that sets forth how much the Debtor should receive from the Affiliates for (i) the Debtor providing payroll and bookkeeping services to the Affiliates, (ii) the Debtor paying for employees who work for the Corinthian Enterprise as a whole, (iii) the Debtor paying rent for office space shared by the Affiliates, (iv) the Debtor paying for general liability insurance for itself and Broadcast Buying, and (v) the Debtor paying for rating services used for the Affiliates. (Motion at 20 (citing Huebscher Decl. ¶¶ 5, 27–28, 30).) The U.S. Trustee also points out that the Debtor's employees do not have employee agreements, and there is no agreement establishing Mr. Miller's salary or commission from the Debtor. (*Id.* at 21.)

The U.S. Trustee argues that a conflict of interest exists because the Debtor may need to investigate the basis for the Miller Claim, and whether the Affiliates paid the proper amount to the Debtor for the expenses it paid on behalf of the Corinthian Enterprise. (*Id.* (citing *In re Marvel Ent. Grp.*, 140 F.3d 463, 473 (3d Cir. 1998) (appointing a trustee when the debtor "would be placed in an awkward position of evaluating their own indenture and debt claims")).)

Finally, the U.S. Trustee argues that the Debtor demonstrated a lack of credibility and transparency in its bankruptcy case by failing to disclose the Affiliates in the Miller Rule 1007-2 Declaration, failing to disclose that Mr. Miller's children partially own a trust that controls the Debtor's Landlord, and failing to include copies of its written checks in its April monthly operating report. (Motion at 22.) Additionally, the U.S. Trustee points out that the Debtor "has

---

calculated by adding the gross receipts of the business concern with the gross receipts of each affiliate." ("June 28 U.S. Trustee Letter," ECF Doc. # 43.)

not been forthright" responding to the U.S. Trustee's and the Subchapter V Trustee's inquiries. (*Id.*)

The Landlord joins in the Motion—subject to the modifications in the June 28 U.S. Trustee Letter—and provides that Mr. Miller "claimed ignorance of basic facts about the operation and history of the Corinthian Enterprise" at least 16 times during the Initial 341 Meeting. (Joinder ¶¶ 1, 5 (citing ECF Doc. # 37-3).) Additionally, the Landlord contends there is still, three months into the bankruptcy case, "insufficient information to adequately evaluate the relationship between the Debtor and the rest of the Corinthian Enterprise." (*Id*. ¶ 6.)

2. *The Objection*

The Debtor argues that the Motion should be denied because the U.S. Trustee fails to establish the "clear and convincing" evidence required to remove the Debtor as debtor in possession. (Objection at 12–13 (citing *In re The 1031 Tax Grp.*, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007)).)

First, the Debtor argues the U.S. Trustee fails to show that the Debtor engaged in fraud because the U.S. Trustee "does not allege, let alone prove, that any PPP funds were used for unauthorized purposes or diverted." (Objection at 13 (noting that "[a]ll PPP funds were used to pay the salaries and commissions of the Debtor's employees, except for Mr. Miller") (citing Miller Decl. ¶¶ 9, 18).)[6]

Second, the Debtor argues the U.S. Trustee's allegations of gross mismanagement are baseless and simply reflect the reality of running a closely held small business. (*Id.* at 21.) The

---

[6] The Debtor states that it is "actively and transparently" dialoguing with the U.S. Attorney's Office and the Small Business Administration ("SBA") to "resolve the PPP issue." (Objection at 13.)

9

Debtor notes that it maintains a separate bank account from the Affiliates, and that the U.S. Trustee "does not accuse the Debtor of comingling funds." (*Id.*)

Third, the Debtor argues that the U.S. Trustee's conflict of interest argument "rests on pure speculation" and does not provide a reason to remove the Debtor. (*Id.* at 22.) The Debtor points out that it has filed the Amended Schedule E/F which no longer includes the Miller Claim, and states that Mr. Miller is "prepared not to [file the Miller Claim] in order to bring about a successful reorganization." (Objection at 23 (citing Miller Decl. ¶ 23).)

Fourth, the Debtor contests the U.S. Trustee's claim that it has not been transparent during its bankruptcy case. (*Id.* at 23–24.) The Debtor argues that the Miller Rule 1007-2 Declaration properly disclosed that the Debtor was not a freestanding business. (*Id.* at 24 (citing Miller Rule 1007-2 Decl. ¶ 2).) The Debtor contends that its failure to name the Affiliates in the Miller Rule 1007-2 Declaration was harmless because it made the Subchapter V Trustee and the U.S. Trustee aware of the nature of the Debtor's relationship with its Affiliates prior to the June 7 Hearing. (*Id.*) Additionally, the Debtor alleges that the Subchapter V Trustee and the U.S. Trustee were aware that a trust for Mr. Miller's children has an ownership interest in the Debtor's Landlord, and in any event, the Debtor's failure to disclose that fact was cured with the Supplemental Miller Rule 1007-2 Declaration. (*Id.* at 25.)

The Debtor also argues that the Motion is premature because the U.S. Trustee and Subchapter V Trustee have not yet sought an order under section 1183(b)(2) of the Bankruptcy Code to expand the Subchapter V Trustee's duties to investigate the Debtor. (*Id.* at 12.) Finally, the Debtor argues that replacing it with the Subchapter V Trustee would "undoubtedly" put the Corinthian Enterprise "out of business for good" because the Debtor and the Affiliates "have

10

fostered a large client network within the media industry, who would almost certainly take their business elsewhere if Mr. Miller were no longer at the helm of the company." (*Id.* at 27.)

### E. July 7 Hearing

At the July 7 Hearing, the Court expressed its concern that if Mr. Miller is removed as the operating debtor in possession, then the Debtor's business may not survive. ("July 7 Hr'g Tr.," ECF Doc. # 57 at 14:5–13, 47:13–18.) The Court asked the parties if the Debtor can survive if the Subchapter V Trustee becomes the operating trustee. (*Id.* at 13:15–17, 14:5–13, 24:6–15.) The U.S. Trustee's attorney stated that granting the Motion would not be analogous to conversion of the case to Chapter 7 and there was certainly no guarantee of liquidation. (*Id.* at 14:14–20.) The Subchapter V Trustee stated that if he is charged with operating the business his goal would be "to preserve the business" and make sure the Debtor's "operation[s] continue to the extent possible uninterrupted." (*Id.* at 25:2–11.) The Debtor's counsel answered that if the Motion is granted "the most likely outcome is that [the Debtor's] seasoned employees, high valued employees with high valued accounts would leave with their accounts, and that would lead to a downward spiral." (*Id* at 26:18–20.) Mr. Miller's counsel agreed with the Debtor's counsel, stating he believed the debtor would "certainly" fail if the Motion is granted. (*Id.* at 37:14–21.)

The Landlord's counsel identified a recent bankruptcy court decision, *In re No Rust Rebar, Inc.*, Case No. 21-12188-PDR, 2022 WL 1639322 (Bankr. S.D. Fla. May 23, 2022) ("*No Rust*"), and argued that it had similar facts to those present here. (July 7 Hr'g Tr. at 43:12–44:6.) The Court adjourned the July 7 Hearing to July 21, 2022, and allowed for the U.S. Trustee and the Debtor to submit supplemental briefs on the *No Rust* decision. (*Id.* at 46:21–47:3, 48:22–49:3.) The Court also required the Subchapter V Trustee to submit a status report assessing the

likelihood that the Debtor can be reorganized if the Subchapter V Trustee's role is expanded by the removal of the Debtor as debtor-in-possession. (*Id.* at 49:5–13.)

    **F.    Status Report and Supplemental Briefs**

        1.    *The Subchapter V Trustee's Status Report*

In the Status Report, the Subchapter V Trustee states that since the July 7 Hearing there has been a "continued lack of disclosure" from the Debtor regarding certain outstanding document and information requests. (Status Report at 2.) The Subchapter V Trustee explains that he and the U.S. Trustee jointly requested information from the Debtor on several historical categories of the Debtor's expenses and that the Debtor provided 3,000 pages of invoices. (*Id.*) However, the Debtor did not provide any information explaining how those invoices reconciled with its financial statements and failed to explain whether the expenses were solely Debtor expenses or also included Mr. Miller's personal expenses. (*Id.*) Additionally, when the Subchapter V Trustee requested bank documents for the Affiliates, the Debtor's counsel insisted that the Subchapter V Trustee sign a non-disclosure agreement before releasing the documents. (*Id.*) The Subchapter V Trustee, who is "not currently represented by counsel, determined that this request was not necessary and may have placed unreasonable limitations on the use of this information." (*Id.*) The Subchapter V Trustee also "requested information regarding unresolved questions surrounding the Debtor's PPP loans," but the Debtor's counsel did not supply any further information. (*Id.*)

Additionally, the Subchapter V Trustee states that he is "pessimistic at any chance of reorganization under these circumstances" because of the "intertwined dependency of the Debtor to the Affiliates and the lack of any financial contractual obligation of the Affiliates to the Debtor." (*Id.* at 3.) The Subchapter V Trustee believes the unexplained 2,400% increase in the Debtor's cash reserves over a three-month period is an example of the Affiliates' ability to

regulate the Debtor's funding. (*Id.* at 1 ("[T]he Schedules reported a total cash balance of $12,280.00 . . . [and] [t]he Plan Supplement . . . shows that $338,120.00 will be available under the plan for the General Unsecured Creditors.").) The Subchapter V Trustee also believes there are potential causes of action against the Affiliates and Mr. Miller, and states that the pursuit of such causes of action "may be more appropriate under a Chapter 7 conversion." (*Id.* at 3.)

        2.    *The Supplemental Briefs*[7]

In its Supplemental Brief, the U.S. Trustee argues that the *No Rust* decision contains many similarities to the Debtor's bankruptcy case. (Supp. Brief ¶ 2.) For example, like Mr. Miller, the president of No Rust Rebar controlled both the debtor and other affiliated companies which operated from the same property, shared expenses, and failed to follow corporate formalities. (*Id.* (citing *No Rust*, 2022 WL 1639322 at *1–3, *8–9).) Additionally, the U.S. Trustee states that lack of transparency was a major issue in *No Rust* and the court in that case also found it "very concerning" that the debtor's assets and non-debtor affiliate's assets were "commingled" such that there "might be" a substantial loss to the estate. (*Id.* ¶¶ 3–4 (citing *No Rust*, 2022 WL 1639322 at *10).) Finally, because No Rust Rebar's president had to effectively investigate his own collective enterprise regarding various transfers, the *No Rust* court found "an incurable conflict of interest" and concluded that there was cause to remove the debtor as debtor in possession. (*Id.* ¶ 4 (citing *No Rust*, 2022 WL 1639322 at *10).)

In its Supplemental Objection, the Debtor argues that its bankruptcy case is "fundamentally different" than the bankruptcy court's decision in *No Rust*. (Supp. Objection at 4.) First, the Debtor notes that prior to ordering conversion to a Chapter 7 case, the *No Rust*

---

[7] The Court will not consider the Debtor's and U.S. Trustee's arguments that were unrelated to the *No Rust* decision. (*See* July 7 Hr'g Tr., 46:21–47:3, 48:22–49:3 (limiting additional briefing to the *No Rust* decision).)

13

court ordered an investigation by the Subchapter V Trustee into potential breaches of fiduciary duty by the debtor's principal and held a four-day evidentiary hearing on the removal motions. (*Id.* at 4–5 (citing *No Rust*, 2022 WL 1639322 at *4).)  Second, the Debtor notes that a key finding of *No Rust* was that the debtor's principal had shuffled assets and liabilities between entities "to fit [his] needs or whims." (*Id.* at 6 (citing *No Rust*, 2022 WL 1639322 at *8).)  As a result, evidence at the hearings suggested that the *No Rust* debtor's assets had been "shielded and hidden from creditors through transfers—including **post-petition** transfers—to related entities at the debtor's expense."  (*Id.* at 7 (citing *No Rust*, 2022 WL 1639322 at *9).)  By contrast, the Debtor asserts that the funds only flow from the Affiliates to the Debtor, and that there has been no allegation that Mr. Miller has diverted funds from the Debtor to the Affiliates or any other entity.  (*Id.*)  Finally, the Debtor argues that unlike the *No Rust* debtor—which was not operating and appeared to have no employees—the Debtor does have a "viable path to reorganization" because it has an operational business with 26 employees.  (*Id.* (citing *No Rust*, 2022 WL 1639322 at *5, *10).)

### G.     July 21 Hearing and Order

At the July 21 Hearing, the Court stated that the Debtor's "grudging disclosure of information" to the Subchapter V Trustee was "completely unacceptable" (July 21 Hr'g Tr. at 7:14–16), and reiterated its concern raised at the July 7 Hearing "that the result of removing the debtor as debtor-in-possession could very well lead to the failure, collapse of the [Debtor's] business, which I don't think would benefit anyone." (*Id.* at 7:16–20, 9:1–5, 16:15–21.)  The Court then informed the parties that it was considering expanding the duties of the Subchapter V Trustee under section 1183(b)(2) to include the power provided in section 1106(a)(3) of the Bankruptcy Code so that the Subchapter V Trustee could investigate the Debtor over the next two weeks and then file a report.  (*Id.* at 7:21–8:6, 8:17–20.)  The U.S. Trustee and the

Subchapter V Trustee both agreed with the Court's proposed course of action. (*Id.* at 9:24, 10:6–8, 13:5–6.) The Court stated that the Debtor would either need to provide complete transparency and answer all the Subchapter V Trustee and U.S. Trustee's requests for information or the Court would consider granting the Motion. (*Id.* at 8:19–25.)

The Court issued a ruling on the record, stating that it would enter an order expanding the scope of the Subchapter V Trustee's duties, with a written opinion to follow, and it will continue the hearing on the Motion. (*Id.* at 23:1–3.) On July 22, 2022, the Court entered the Order (i) directing the Subchapter V Trustee to investigate the Debtor and file a report, and (ii) directing the U.S. Trustee to file a status report. (*See* Order at 1–2.)[8]

## II. LEGAL STANDARD

### A.    Removal of Debtor in Possession Under 1185(a)

Under Subchapter V, the term "debtor in possession" refers to "the debtor, unless removed as debtor in possession under section 1185(a)." 11 U.S.C. § 1182(2). Section 1185(a) of the Bankruptcy Code provides the following:

> On request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case, or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter.

*Id.* § 1185(a).

If a debtor is removed as debtor in possession, the Subchapter V Trustee's duties are expanded under section 1183(b)(5) to include, amongst other duties, "operating the business of the debtor." *Id.* § 1183(b)(5).

---

[8] The deadline for the filing of the two reports was August 8, 2022 at 12:00 p.m. (*See* Order at 1–2.) On August 2, 2022, the Court granted the Subchapter V Trustee and U.S. Trustee's requests to extend the deadlines to August 15, 2022.

15

### B. Expanding the Subchapter V Trustee's Duties Under Section 1183(b)(2)

Under section 1183(b)(2) of the Bankruptcy Code, the Court may "for cause and on request of a party in interest, the trustee, or the United States trustee" order that a Subchapter V Trustee's powers are expanded to include the powers specified in sections 1106(a)(3) and (4). *Id.* § 1183(b)(2). Sections 1106(a)(3) and (4) provide, in relevant part, that the trustee shall:

> (3) . . . investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; [and]
>
> (4) as soon as practicable—
>
>> (A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate;

*Id.* § 1106(a).

The Bankruptcy Code does not specify what constitutes "cause" for the Court to expand a Subchapter V Trustee's duties under section 1183(b)(2). *Id.* § 1183(b)(2). Collier provides that the standard for cause under section 1183(b)(2) "should not be higher than the standard for cause . . . [f]or removing a subchapter V debtor in possession under section 1185[a]." 8 COLLIER ON BANKRUPTCY ¶ 1183.03[3] (16th ed. 2022). The Court located one decision in which a bankruptcy court expanded a Subchapter V Trustee's duties under section 1183(b)(2) where there existed "the potential issue of intercompany claims." *See In re AJEM Hosp., LLC*, No. 20-80003, 2020 WL 3125276, at *1 (Bankr. M.D.N.C. Mar. 23, 2020); *see also* Hon. Paul W. Bonapfel, A GUIDE TO THE SMALL BUSINESS REORGANIZATION ACT OF 2019 (Revised June 2022) (the "GUIDE") at 82 n.196 (noting that if there are substantial issues about potential insider claims, the court may consider expanding a Subchapter V Trustee's duties to authorize the

16

Subchapter V Trustee to investigate the potential claims and file a report). "Cause" to expand a Subchapter V Trustee's duties is also likely to exist where there are "significant questions such as the debtor's true financial condition, what property is property of the estate, the debtor's management of the estate as debtor in possession, and the accuracy and completeness of the debtor's disclosures and reports." GUIDE at 57 (citing *In re Ozcelebi*, 639 B.R. 365, 383 (Bankr. S.D. Tex. 2022)).

A court may *sua sponte* issue an order expanding the Subchapter V Trustee's duties under section 1183(b)(2), even though the subsection contains the phrase "on request of a party in interest." *See In re Pittner*, 638 B.R. 255, 259 (Bankr. D. Mass. 2022) ("Though [section 1185(a)] begins 'on request of a party in interest,' § 105(a) of the Bankruptcy Code makes clear that the Court may raise the issue *sua sponte*."); *see also In re Ozcelebi*, 639 B.R. at 425 (issuing an order providing that the court would *sua sponte* consider whether the debtor should be removed under section 1185(a)).

### III.  DISCUSSION

As explained at the July 7 and July 21 Hearings, the Court remains concerned that the Debtor's business will fail if the Motion is granted and the Debtor is removed as debtor in possession. (*See* July 7 Hr'g Tr. at 47:13–18; July 21 Hr'g Tr. at 7:17–20 ("[T]he result of removing the debtor as debtor-in-possession could very well lead to the failure, collapse of the business, which I don't think would benefit anyone.").) The Court believes that the best thing for the Debtor and its estate at this time is for the Court to expand the Subchapter V Trustee's duties so that he has the authority under section 1106(a)(3) to investigate the Debtor's business. 11 U.S.C. §§ 1183(b)(2), 1106(a)(3).[9]

---

[9]  The hearing on the Motion has been continued to August 16, 2022. (ECF Doc. # 70.)

17

There is ample cause to expand the Subchapter V Trustee's duties under section 1183(b)(2). First, the lack of any intercompany agreement between the Debtor and its Affiliates raises a substantial issue whether the Debtor has intercompany claims against the Affiliates or vice versa. (*See* Motion at 20–21 (stating there is no intercompany agreement that sets forth how much the Affiliates should pay the Debtor for the Debtor's providing its Affiliates payroll and bookkeeping services, employees, rent for shared office space, and paying for rating services used by the Affiliates) (citing Huebscher Decl. ¶¶ 30, 34–35).) Second, there is still a question whether Mr. Miller will assert the Miller Claim against the Debtor and, if so, whether there is any basis for such claim. (Motion at 21; Objection at 23 (noting that Mr. Miller "is prepared not to" bring the Miller Claim).) GUIDE at 82 n.196 (noting that if there are substantial issues about potential insider claims, the court may consider expanding a Subchapter V Trustee's duties to authorize the Subchapter V Trustee to investigate the potential claims and file a report). Finally, the Debtor's continued lack of disclosure to the Subchapter V Trustee also constitutes cause to expand the Subchapter V Trustee's duties. (Status Report at 2.) GUIDE at 57 (citing *In re Ozcelebi*, 639 B.R. at 383).

[*Remainder of page intentionally left blank*]

## IV. CONCLUSION

For the reasons explained above, the Court **FINDS** there is cause to expand the Subchapter V Trustee's duties under section 1183(b)(2) to include an investigation of "the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuation of such business . . . ." 11 U.S.C. § 1106(a)(3). Depending on the outcome of the investigation, further relief, such as removal of the Debtor as debtor in possession, or dismissal or conversion of the case, may be required.

The Order expanding the Subchapter V Trustee's duties has already been entered.

Dated:   August 3, 2022
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge