**A.Y. STRAUSS**
ATTORNEYS AT LAW

101 Eisenhower Parkway, Suite 412
Roseland, NJ 07068
(973) 287-0966

535 Fifth Avenue, 4th Floor
New York, NY 10017
(646) 374-0255

Heike M. Vogel, Esq.
Partner
646-374-3026
hvogel@aystrauss.com

August 15, 2022

**VIA ECF AND E-MAIL**

The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re:  *In re Corinthian Communications, Inc.*,
Case No. 22-10425 (MG)

Dear Judge Glenn:

This firm is counsel to the above-referenced chapter 11 debtor and debtor in possession (the "***Debtor***"). As Your Honor is aware, earlier today, Eric Huebscher, the Subchapter V Trustee (the "***Sub-V Trustee***") appointed in this chapter 11 case, filed his Supplemental Status Report as Docket No. 72 (the "***Report***"). The purpose of this letter is to correct fundamental misstatements made by Mr. Huebscher in the Report.

**Corinthian Communications II Bank Account**

The Sub-V Trustee suggests that the Debtor purposely withheld information about a bank account in the name of Corinthian Communications II (the "***CCII Account***"), and that he only discovered the existence of this through his investigation. That is not correct. The Debtor disclosed the CCII Account to the Sub-V Trustee immediately upon its discovery by the Debtor.

The reason the Debtor did not previously disclose the account was because it did not realize the CCII Account was open. The Debtor had believed that such was closed several years back. The fact that this account was still open was only discovered during approximately the last week, during searches for documents responsive to the Sub-V Trustee's document requests. Once it was discovered that the account had not been closed, the account information was immediately





produced to the Sub-V Trustee.  This disclosure was the result of diligent efforts by the Debtor to ***comply*** with the Sub-V Trustee's investigation, not to thwart it.[1]

Critically, the Sub-V Trustee's allegation in the Report that the CCII Account was used for "over $350,000 in Mr. Miller's personal expense payments between 2016 and October 2020" (Report at 3) is not true and must be corrected.  As explained to the Sub-V Trustee, the only category of expenses paid from the CCII Account that could potentially be characterized as personal expenses of Mr. Miller was medical expenses.  The total amount of the medical expenses during the years of 2016 through 2021 was approximately $45,000.  Mr. Miller does not take employee-sponsored health insurance through the Debtor, although eligible.  By comparison to what such insurance would cost the Debtor, we believe the amount of medical expenses accrued over a five-year period resulted in overall savings to the Debtor.

All other expenses paid with the CCII Account were ***business expenses***.  These expenses include:

(i) approximately $175,000 in consulting fees for financial consulting services, a key business expense made years ago;
(ii) Technology and office expenses, such as computers, software, and applications;
(iii) subscription services for business publications;
(iv) business travel expenses, including taxi;
(v) theater tickets, meals, and other client entertainment – the theater industry is a critical client base, and, mainly , other Debtor employees and not Mr. Miller himself, took clients to shows and dinners.

These categories of expenses are set forth in **Exhibit A** hereto.

**Tax Return Information for 2021**

The Sub-V Trustee states in the Report that Mr. Miller and his accountant would not provide information on anticipated profit for 2021.  That is not true.  As explained to the Sub-V Trustee in correspondence and on teleconferences, the Debtor and the other Non-Debtor Entities within the Corinthian enterprise have an extension until September 2022 to file their respective 2021 tax returns.  The reason that the parties cannot turn over the anticipated profit is that the working papers for such have not yet been prepared.

---

[1] With regard to the dollar amounts in such account, it appears that since July 2020, there was approximately $8,000 in the account. From July 2020 through September 2021 (when the account had a zero balance), there were no monies deposited into such account and the only monies coming out were bank fees.





Apparently, that explanation was not sufficient. Indeed, in an email dated August 3, 2022, Mr. Huebscher writes: "This is an unacceptable response. 21 must now available." A copy of that email as well as the responses thereto are attached as **Exhibit B**.

Further, Mr. Huebscher's speculation that Mr. Miller will receive approximately $750,000 in ordinary income for 2021 from non-Debtor Corinthian Media Inc. is inaccurate and inconsistent with historical results. Indeed, pursuant to the tax returns provided to Mr. Huebscher for the years of 2016 through 2020, Mr. Miller reported K-1 income for Corinthian Media as follows:

- 2016: $33,945
- 2017: $(2,431)
- 2018: $(544,426)
- 2019: $38,185
- 2020: $(38,661)

**Alleged Potential Claims by and against Mr. Miller**

In his Report, the Sub-V Trustee focuses on whether Mr. Miller has a valid claim against the Debtor, ultimately opining that he does not. While the Sub-V Trustee does note that the claim was initially withdrawn, he fails to mention that the claims bar date has since passed, and that Mr. Miller did not assert a claim. Therefore, whether Mr. Miller has a valid claim based on the Sub-V Trustee's view is not material or relevant in this proceeding.

In addition, the Sub-V Trustee asserts that claims against Mr. Miller are in the range of $1.25mm to $1.75mm. That lacks any sense. There is no explanation in the Report of where the Sub-Chapter V Trustee derived that range. Mr. Miller has not taken any salary from the Debtor since 2016. Additionally, there have been no transfers to him from the Debtor. At best, Mr. Miller may be found to be responsible for approximately $45,000 in medical expenses and certain legal bills paid by the Debtor totaling less than $200,000. But again, Mr. Miller is personally contributing over $900,000 into the chapter 11 plan, which more than covers amounts (if any) for which he may be found to be personally responsible. It far exceeds the Debtor's projected net income over the next three years as well. The plan, we respectfully submit, provides the greatest return the Debtor's creditors, employees and administrative creditors.

**Non-Debtor Entities**

The Sub-V Trustee states in the Report that non-Debtor affiliated entities should have been listed as "co-debtors" (Report at 2). There is no basis for this assertion. Neither the non-debtors nor Mr. Miller guaranteed the Debtor's lease or co-signed the lease. No party has filed a





substantive consolidation adversary proceeding or an adversary proceeding requesting that the corporate veil be pierced.

**The PPP Loans**

The Sub-V Trustee states that he "does not believe that Mr. Miller had the discretion to exclusively fund payroll with the PPP loan proceeds given the overall business downturn experienced during the times of loan origination" (Report at 3). However, SBA regulations governing the PPP loans do not require a portion of the loans to fund rent, and nothing in the program prohibits a borrower from using a loan to exclusively fund payroll. The entire program was implemented to support payroll. *See* 86 FR 3712, at 3712-13, 3715 (explaining that "a primary purpose of the PPP" is for small businesses to "retain employees").

While it may be true that in 2020 "the employee salary expense was slightly higher comparably as a percent of Affiliate receipts than in 2019," that is to be expected. The purpose of the PPP program is to keep salaries intact while a company's revenues decline due to Covid-19 shutdowns. This is exactly what happened here, where advertising revenues, particularly from Broadway shows, fell off due to Covid-19.

**The Debtor's Efforts to Comply with the Sub-Chapter V Trustee's Investigation**

It is important to highlight the extent of the Debtor's efforts to comply with the Sub-V Trustee's investigation and the extent of information the Debtor has provided to the Sub-V Trustee since the last hearing held before this Court. The Debtor uploaded thousands of document pages into 21 Dropbox folders, organized by category with relevant folders and subfolders serving as an organizational and explanatory outline of all documents.

The Debtor further believes that it answered every question posed by the Sub-V Trustee to the fullest extent possible and provided every document requested by the Sub-V Trustee that exists and it was able to locate through diligent searches. Additionally, explanatory conference calls were held between the Debtor's principal, counsel, the Sub-V Trustee, and others, on which, each question was answered by the Debtor's principal and others on the call to the fullest extent possible. At bottom, the Debtor, its principal, and its employees have spent the last several weeks working full time to comply with the requests made by the Sub-V Trustee by opening up their books and worked to provide all information and answers the Sub-V Trustee has requested.





The Debtor respectfully requests that information provided herein be considered by the Court when rendering its decision on the motion to remove the Debtor from management scheduled for continued hearing tomorrow morning.

                        Respectfully submitted,

                        */s/ Heike M. Vogel*

                        Heike M. Vogel

cc:    Susan Arbeit, Esq. (ECF & E-mail)
        Eric Huebscher (ECF & E-mail)
        Paul Aloe, Esq. (ECF & E-mail)
        David Saponara, Esq. (ECF & E-mail)
        David Kozlowski, Esq. (ECF & E-mail)



# EXHIBIT "A"

**Income/Expense by Category**

| | |
|---|---:|
| Bank Charge | 1,830.00 |
| Client Entertainment | 25,048.07 |
| CSC Fee | 1,901.25 |
| Dues and Subscriptions | 5,137.75 |
| Fee | 116.91 |
| Flowers For Office | 829.87 |
| Internet, Phone, Cable | 17,058.70 |
| Medical | 45,948.31 |
| Misc. | 1,460.86 |
| Office Computer | 12,771.96 |
| Pharmacy | 266.99 |
| Prof and Legal Fees | 200,214.70 |
| Transfers Out | 7,093.42 |
| Travel | 36,454.92 |
| TO Merill-CC II-xx700 cash | 158.27 |
| **TOTAL EXPENSES** | **356,291.98** |

EXHIBIT "B"

| | |
|---|---|
| **Subject:** | Re: Corinthian Communications, Inc; Case 22-10425 |
| **Date:** | Wednesday, August 3, 2022 at 6:04:42 PM Eastern Daylight Time |
| **From:** | Eric Horn |
| **To:** | ehuebscher huebscherconsulting.com |
| **CC:** | Max Markidan, Heike Vogel |
| **Attachments:** | image001.jpg, image002.png, image003.jpg, image004.png |

Well . . . that is the response. If company does not have, company cannot give.

Warmest regards,
Eric

**Eric H. Horn** Partner



101 Eisenhower Parkway, Suite 412, Roseland, NJ 07068

535 Fifth Avenue, 4th Floor, New York, NY 10017
NJ 973-287-5006 | NY 646-374-3020 | M 201-562-2095

**For CRE stories, follow** *The Dealmakers' Edge with A.Y. Strauss* **podcast**

www.aystrauss.com

---

**From:** ehuebscher huebscherconsulting.com <ehuebscher@huebscherconsulting.com>
**Date:** Wednesday, August 3, 2022 at 6:02 PM
**To:** Eric Horn <ehorn@aystrauss.com>
**Cc:** Max Markidan <mmarkidan@huebscherconsulting.com>, Heike Vogel <hvogel@aystrauss.com>
**Subject:** [EXT] Re: Corinthian Communications, Inc; Case 22-10425

Mr Horn
This is an unacceptable response. 21 must now available.
Eric Huebscher

Eric Huebscher
Sent from my IPhone
Please excuse all spelling mistakes

> On Aug 3, 2022, at 5:59 PM, Eric Horn <ehorn@aystrauss.com> wrote:
>
> From Block:
>
> *We post the general ledger annually (not monthly as some other businesses do). If we haven't posted 2021 we couldn't possibly post 2022.*

**Eric H. Horn** Partner



101 Eisenhower Parkway, Suite 412, Roseland, NJ 07068

535 Fifth Avenue, 4th Floor, New York, NY 10017
NJ 973-287-5006 | NY 646-374-3020 | M 201-562-2095

**For CRE stories, follow** *The Dealmakers' Edge with A.Y. Strauss* **podcast**

www.aystrauss.com

---

**From:** ehuebscher huebscherconsulting.com <ehuebscher@huebscherconsulting.com>
**Date:** Wednesday, August 3, 2022 at 5:27 PM
**To:** Eric Horn <ehorn@aystrauss.com>
**Cc:** Max Markidan <mmarkidan@huebscherconsulting.com>, Heike Vogel <hvogel@aystrauss.com>
**Subject:** [EXT] Re: Corinthian Communications, Inc; Case 22-10425

Please send me the detailed financial statement, on a cash basis, for CMI, CTI and BBS for 2021 and the first 6 months of 2022

Eric Huebscher
Sent from my IPhone
Please excuse all spelling mistakes

> On Aug 3, 2022, at 5:24 PM, Eric Horn <ehorn@aystrauss.com> wrote:
>
> This is from Michael Block:
>
> *There are no analysis that were used for the preparation of extension payments for CMI, CTi, BBS and CCi.*
>
> **Eric H. Horn** Partner
> A.Y. Strauss
>
> 101 Eisenhower Parkway, Suite 412, Roseland, NJ 07068
>
> 535 Fifth Avenue, 4th Floor, New York, NY 10017
> NJ 973-287-5006 | NY 646-374-3020 | M 201-562-2095
>
> **For CRE stories, follow** *The Dealmakers' Edge with A.Y. Strauss* **podcast**
>
> www.aystrauss.com

**From:** ehuebscher huebscherconsulting.com <ehuebscher@huebscherconsulting.com>
**Sent:** Wednesday, August 3, 2022 4:23:21 PM
**To:** Eric Horn <ehorn@aystrauss.com>; Heike Vogel <hvogel@aystrauss.com>
**Cc:** Max Markidan <mmarkidan@huebscherconsulting.com>
**Subject:** [EXT] Corinthian Communications, Inc; Case 22-10425

Heike/Eric:
Good afternoon.
We are continuing our detailed review and analysis of various documents. Please note that the submission for the 21 tax returns is consistent with our request. We aske for the accountant workpapers for CMI, CTT, BBS and CCI. We are sent the return extensions.
We are seeking the detailed and complete tax analysis that must be performed for these Sub S entities.
Please upload the requested information.
Thank you.
Eric

Eric Huebscher, MBA, CPA, CFE, CPCO
Trustee – Chapter 11/Subchapter V
President
Huebscher & Co.
301 East 87th Street
New York, NY 10128
P - 646.584.3141
M – 917.763.3891
EFAX – 212.202.3503

*Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.*